Larry Joe JACOBS, Appellant,

v.

STATE of Texas, Appellee.

No. C14–81–504–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 12, 1984.

Discretionary Review Refused
Nov. 14, 1984.

Frumencio Reyes, Houston, for appellant.

Ray Elvin Speece, Houston, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

SEARS, Justice.

Appellant, a juvenile, was certified to stand trial as an adult, was convicted of capital murder and was assessed the mandatory sentence of life imprisonment. We affirm the conviction.

The central issue is whether the Juvenile Division of the Houston Police Department (H.P.D.) is a juvenile detention facility designated by the Juvenile District Courts as required by TEX.FAM.CODE ANN. § 51.-09 (Vernon Supp. 1982–1983). We hold that it is.

Appellant was convicted for the capital murder of Bernard C. Bley. Bley and a companion drove to an area known as Third Ward, in Houston, to buy drugs. Appellant and another youth approached the car and one of them asked Bley and his companion if they wanted to buy some drugs. At some point a controversy developed, Appellant pulled a gun, shot Bley and grabbed his money.

Approximately one week later, two H.P.D. plainclothes officers, Officer Zeringue of the Juvenile Division and Officer Roscoe of the Homicide Division, received information that Appellant had participated in a similar offense. The officers then went to Appellant's home and were invited into the house by one of his sisters. Officer Zeringue asked Appellant's mother for permission to search for a gun in Appellant's room. He explained that she did not have to consent to a search without a warrant and then presented the consent to search form which she signed. Appellant was present at all times during these events.

Appellant led the officers to his bedroom and was in the room while the officers conducted the search. The officers found a small quantity of marijuana and several rounds and clips of ammunition. Appellant was arrested for possession of marijuana.

Appellant was read his juvenile warnings and, after indicating he understood them, was taken directly to the Juvenile Division of H.P.D. Approximately one hour later he was taken before a Magistrate who also read his warnings to him. Appellant again indicated he understood them and was returned to the Juvenile Division of H.P.D. for questioning about Bley's murder. Appellant and his mother consented for him to take a polygraph test, which he failed. Approximately thirty minutes later, Appellant confessed to killing Bley.

Officer Zeringue took notes as Appellant confessed and then typed the statement. Appellant read the statement and made all necessary corrections. Officer Zeringue then took Appellant before another Magistrate and presented the statement and a form entitled "Magistrate's Determination of Juvenile's Competency to Make Confession." The Magistrate, alone with Appellant, read each warning to him and waited for an acknowledgment or response. After the Magistrate was satisfied that the statement was voluntarily given and that the facts contained therein were true, Appellant signed each page of the statement. The Magistrate signed the last page.

■ Appellant presents six grounds of error. In ground of error six, he argues the trial judge committed reversible error by not filing his findings of fact and conclusions of law as to the voluntariness of Appellant's statement. We originally abated this appeal and directed the trial judge to file his findings and conclusions as required by TEX.CODE CRIM.PROC.ANN. art. 38.22 § 6 (Vernon 1979). *See Jacobs v. State*, No. C14-81-504CR (Tex.App.—Houston [14th Dist.] March 24, 1983, no pet.) (not reported). Although the trial judge was defeated in an election held in the interval between the date of judgment and the date of our original opinion, he still had the authority to file his findings and conclusions in connection with this case, *see Crawford v. Crawford*, 315 S.W.2d 190 (Tex.Civ.App.—Waco 1958, no writ), and did so on November 3, 1983. Those findings and conclusions were included in a

Supplemental Transcript filed with this court on December 1, 1983. Consequently, we now overrule ground of error six.

In ground of error five, Appellant alleges that the search of his bedroom was illegal because it was made without a warrant and without his consent. He alleges a parent cannot waive a juvenile's rights. Ground of error four assigns error in overruling a Motion to Suppress and in admitting the evidence found during the search. Both arguments are without merit.

■ There is no question that neither probable cause nor a search warrant is necessary if consent to search is given. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Kolb v. State,* 532 S.W.2d 87 (Tex.Crim. App.1976). Further, contrary to Appellant's assertion, the Texas Court of Criminal Appeals passed directly on the issue of whether a parent can consent to a search of her child's bedroom in *Sorenson v. State,* 478 S.W.2d 532 (Tex.Crim.App.1972). The juvenile defendant in *Sorensen* was convicted of possession of marijuana. Like Appellant in our case, he lived at home. The court found that the defendant had no "reasonable expectation of privacy" in his bedroom, that his mother had a right to be in his bedroom, that she could consent to the search of his bedroom and that her consent obviated the need for a search warrant. Further, the court found her consent was binding upon everyone who had rights in the bedroom. *Id.* at 534–35 (citing *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). Grounds of error five and four are overruled.

In ground of error one Appellant alleges that the trial court erred when it overruled his Motion to Suppress the Confession because it was obtained as the result of an illegal arrest. Appellant argues that the arrest was illegal because the police officers did not have probable cause to arrest him for Bley's killing. He also argues that the marijuana was used as a pretext to arrest him. Finally, he claims that the search was illegal because the police officers knew the murder weapon had already been recovered but still used the pretext of looking for it to obtain consent to search. We find no merit in any of these arguments, which we will address in reverse order.

On October 27, another officer told Officer Roscoe that a gun had been recovered on October 24 from a man arrested in the same vicinity as where Bley was murdered. Although that man knew Appellant and was holding his gun at his request at the time he was arrested, he told the arresting officers that he did not know the man who had given him the gun. Officer Roscoe checked out the gun from the Property Room on October 27 and took it to the Firearms Division in order to have tests run on the gun for ballistics comparison with the slug removed from Bley's body. Officer Roscoe learned of the results of the tests on October 28, approximately two hours *after* Appellant was arrested.

■ The man who was arrested on October 24 was arrested again on October 28, in connection with Bley's murder. At that time he gave a statement retracting his previous remark, that he did not know who had given him the gun, and admitting that the gun belonged to Appellant. Appellant was already in police custody when this statement was made. Thus, we find no "pretext search" occurred.

■ Further, no pretext arrest occurred. The police officers were justified in arresting Appellant for possession of marijuana after finding it in a box under the mattress of his bed. *See Sorensen,* 478 S.W.2d at 534.

■ Finally, the arrest was not illegal due to the lack of probable cause to arrest him for capital murder. Appellant was initially arrested for possession of marijuana, not for capital murder. We find the statement was given pursuant to a legal arrest and overrule ground of error one.

Appellant also attacks the introduction of his statement in ground of error two. He argues the trial court erred when it denied Appellant's Motion to Quash Indictment for

the court's alleged failure to provide Appellant with his rights under TEX.FAM.CODE ANN. § 51.09 (Vernon Supp. 1982–1983). Section 51.09 provides that a child's statement is admissible provided a Magistrate gives him certain warnings and the child knowingly, intelligently and voluntarily waives the rights contained in the warnings. Appellant contends he did not waive the statutory rights contained in the warnings which were read to him.

■ We first note that Appellant did not seek the appropriate relief. Even if Appellant's statement was not admissible, that fact would not be a proper ground for quashing the indictment. Appellant should have moved to suppress the confession on the basis of a § 51.09 violation. Nevertheless, we have reviewed the record to determine if § 51.09 was violated and find it was not.

The Magistrate who examined Appellant testified that he read Appellant's rights under the Family Code verbatim, paraphrased each right and then asked Appellant if he had any questions. After satisfying himself that Appellant understood his rights, the Magistrate specifically inquired whether Appellant was coerced into making the statement. Again, after satisfying himself that Appellant voluntarily gave the statement, and knew and understood the consequences of making the statement, he reviewed the statement sentence by sentence or phrase by phrase to make sure Appellant meant what he said and that the statement was true. Appellant indicated that the statement was true and correct. After the Magistrate told Appellant he did not have to sign the statement, he nevertheless signed each page of it. The Magistrate testified that he would not have allowed Appellant to sign it had he not believed it was voluntarily given.

After Appellant signed the statement, the Magistrate completed the form entitled "Magistrate's Determination of Juvenile's Competency to Make Confession." The Determination, which was introduced into evidence, recited the Magistrate's finding, based on his interview with Appellant, that Appellant knowingly and voluntarily signed the statement after receiving all proper warnings.

■ We hold that this testimony and the Determination supports the trial court's finding that the confession was knowingly, intelligently and voluntarily given after Appellant was apprised of and affirmatively waived his rights under § 51.09. *See Carter v. State*, 650 S.W.2d 793 (Tex.Crim.App. 1983) (en banc) (certification of knowing and voluntary waiver of rights complies with requirements that Magistrate also certify intelligent waiver of rights); *Darden v. State*, 629 S.W.2d 46 (Tex.Crim.App. 1982).

The final ground of error, number three, concerns the trial court's denial of the Motion to Quash Indictment for the alleged failure to provide Appellant with his rights under TEX.FAM.CODE ANN. § 52.02 (Vernon 1975). Section 52.02 provides in pertinent part:

(a) [A] person taking a child into custody, without unnecessary delay and without first taking the child elsewhere, shall do one of the following:

 *　　*　　*　　*　　*　　*

(3) bring the child to a detention facility designated by the juvenile court;

 *　　*　　*　　*　　*　　*

We again note that Appellant did not seek the appropriate relief. Nevertheless, we have reviewed the record and conclude that § 52.02 was not violated.

■ As previously explained, this appeal originally was abated in order to allow the trial judge to enter his findings of fact and conclusions of law. In finding number eight, the trial judge took

judicial notice, based on his personal experience and knowledge thereof and upon common published official designation of said facility by the District Judges of Harris County, Texas, as a juvenile detention facility as specified in § 51.12(b), Texas Family Code, that the Juvenile Division of the Houston Police

Department was at that time such a designated juvenile detention facility.

This finding has not been challenged via a supplemental brief. However, it is incorrect because the trial court found that the *district* judge had designated the Juvenile Division of H.P.D. as a juvenile detention facility. We find that a criminal district court does not have the authority to make such a designation.

 While we recognize that a juvenile court is a district court, § 52.02 requires the designation of a juvenile detention facility be made by the juvenile courts. Therefore, this court takes judicial notice that the three Harris County *juvenile courts* have designated the Juvenile Division of H.P.D. as a juvenile detention facility. *See James v. State,* 546 S.W.2d 306 (Tex.Crim. App.1977); *Harper v. Killion,* 345 S.W.2d 309, 312 (Tex.Civ.App.—Texarkana), *aff'd,* 162 Tex. 481, 348 S.W.2d 521, 523 (1961). Ground of error three is overruled.

The conviction is affirmed.