Danny Lee BARBER, Appellant,

v.

The STATE of Texas, Appellee.

No. 68905.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 16, 1987.

Melvyn Carson Bruder, Dallas, for appellant.

Henry Wade, Dist. Atty. and Karen Chilton Beverly, Doug Moulder, Kelly Loving and Paul Macaluso, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

Appellant was convicted of capital murder under V.T.C.A., Penal Code, § 19.03. After the jury found appellant guilty and affirmatively answered the three special issues submitted pursuant to Article 37.-071, V.A.C.C.P., the court assessed punishment at death. V.T.C.A., Penal Code, § 12.31.

Appellant does not challenge the sufficiency of the evidence to sustain the finding of guilt or the affirmative answers to the special issues. The evidence clearly shows that appellant killed Janie Ingram during the course of a burglary of a habitation.

Appellant raises nine points of error. He contends (1) that the trial court erred in failing to empanel a separate jury to determine his competency to stand trial; (2) that the trial court erred in admitting into evidence his written confession which was the fruit of an illegal arrest; (3) the court erred in failing to sustain a challenge for cause

to venireman Henry Dove; (4) and (5) that in two instances the court erred in authorizing the jury to convict upon a theory not plead in the indictment or permitted by law; (6), (7), (8) and (9) that the court erred in admitting at the penalty stage of the trial confessions to four unadjudicated extraneous offenses including three other murders and one attempted murder charge.

At the outset appellant contends that the trial court erred in failing to empanel a jury to determine the issue of his competency to stand trial.

The trial court granted appellant's pretrial motion for psychiatric examination and appointed Dr. Charles Lett in accordance with appellant's request, and also appointed Dr. Clay Griffith to examine appellant. At the same time the court noted on the pretrial motion to try the accused on the issue of competency alone "carried per [defense attorney's initials]...."

After the jury in this capital murder prosecution was selected and sworn after over two weeks of voir dire examination, and after jeopardy had attached, appellant's counsel brought to the court's attention that Dr. Lett had filed a report that very day concluding, after changing his mind, that the appellant was incompetent to stand trial. An hour later the court undertook to conduct a hearing. See Article 46.02, § 2(a) and (b), V.A.C.C.P.[1]

Dr. Lett testified that appellant was a schizophrenia paranoid type, that because of his childhood, and his disturbed, illogical contradictory and delusional thinking, he was incompetent to stand trial, and unable to communicate with his attorney in a rational and factual manner.[2] In reaching his diagnosis Dr. Lett relied on the fact that appellant did not demonstrate "much

guilt, not that much remorse, not that much concern about the predicament he was in, nor fear of what was going to happen to him. It is what we call an impoverished or a flattened affect which is a key characteristic of a schizophrenic."

In pointing out appellant's thinking was illogical Dr. Lett said appellant told him that he had gone to Lake Ray Hubbard and shot fish with a bow and arrow, and he (Dr. Lett) found appellant's thinking delusional because he (Dr. Lett) did not believe he could actually shoot fish, piercing them with an arrow. The doctor's conclusion was further based on the fact that appellant told him that he aimed a rifle at a man, 200 or 300 yards away, and with his eyes closed, shot the man in the shoulder. His conclusion would not be changed even if told appellant had in fact shot an individual from the distance described with a 30.06 rifle. Another factor in determining appellant was delusional Dr. Lett related was that appellant told him that after the man was shot a police helicopter appeared overhead and that appellant found his car surrounded by police who searched the car but not the unlocked trunk. The doctor testified, "I have more faith in the Dallas Police than thinking if they were doing the search, they would not have searched his trunk which was wide open and which did conceal two guns and a bow and arrow which he had stolen from the house." The prosecutor read to the doctor from the official police report which reflected that the car trunk was not searched at the time.

Dr. Lett testified he did not have any difficulty communicating with the appellant and that appellant understood his questions. Dr. Lett related that appellant understood he was in court with a judge and

---

1. Article 46.02, § 2(a) and (b), V.A.C.C.P., provides:

"Sec. 2. (a) The issue of the defendant's incompetency to stand trial shall be determined in advance of the trial on the merits if the court determines there is evidence to support a finding of incompetency to stand trial on its own motion or on written motion by the defendant or his counsel filed prior to the date set for trial on the merits asserting that the defendant is incompetent to stand trial.

"(b) If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial."

2. The test for incompetency to stand trial is set forth in Article 46.02, § 1(a):

"Section 1. (a) A person is incompetent to stand trial if he does not have:

"(1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; or

"(2) a rational as well as factual understanding of the proceedings against him."

in trial and had lawyers, etc. Dr. Lett testified, "... I have never indicated that he has a disturbance of intellect." And he related there was no reason why appellant could not tell his lawyers the same story as related to him. He had not talked to or discussed the matter with appellant's lawyers. Dr. Lett concluded that appellant had a grandiose manner of relating events, and that because appellant bragged about certain acts which he (Dr. Lett) did not think were likely to occur in that manner the appellant was delusional.

Dr. Clay Griffith testified he had examined the appellant and that the appellant was competent to stand trial. At the conclusion of the hearing the court stated:

"The Court, having held on its own motion, a hearing pursuant to that mandated by Article 46.02, Section 2, Paragraph B [46.02, § 2(b)], finds no evidence at this time to support a finding of incompetency of the Defendant to stand trial.

"Now, the Court will permit the Defense to reurge that if at some time additional evidence comes to their attention. The Court has heard the testimony of Dr. Lett and Dr. Griffith and the Defendant who testified earlier at a separate hearing,[3] and the Court is taking that testimony into account as part of the evidence upon which this finding is based. The Court also presumes—I deem this to be a rebuttable presumption and if anybody wants to offer evidence to rebut it, they certainly will have an opportunity.

"The Court presumes if counsel who are not going to be forced to testify by the Court—the Court does presume if the issue of the Defendant's ability to communicate with his counsel and assist them in the preparation of the case was a problem or is a problem, the Court presumes that counsel would have by now made that known to the Court.

"The Court further presumes that should that become a problem, that they will, pursuant to their responsibilities as counsel and officers of the Court, make it known to the Court forthwith and would have done so had that been a problem previously....

[DEFENSE COUNSEL]: Your Honor, to which ruling of the Court ... [appellant] objects and excepts to the Court's ruling and the Court's presumptions."

■ As is evident, the court conducted a hearing "during the trial" pursuant to Article 46.02, § 2(b), "to determine whether or not there is evidence to support a finding of incompetency to stand trial." At the conclusion of the hearing the court found "no evidence to support a finding of incompetency." See Article 46.02, § 4(a). No separate jury to determine appellant's competency was empaneled.

In *Johnson v. State*, 564 S.W.2d 707 (Tex.Cr.App.1978) (Opinion on State's Motion for Rehearing), extant at the time of the instant trial, this Court held that under Article 46.02, supra, if evidence of incompetency is brought to its attention *during trial* the Legislature intended to preserve the bona fide doubt in the mind of the trial judge as the standard of proof to be met before a separate, mid-trial determination of the accused's competency will be required.[4] See § 2(b) of Article 46.02. See

---

3. Reference was to the *Jackson v. Denno* [378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908] or Article 38.22, V.A.C.C.P., hearing on the admissibility of appellant's confession. That hearing is in the appellate record before this Court.

4. In *Johnson v. State*, 564 S.W.2d at 710, it was written:

"An interpretation of Article 46.02(2)(b) to mean that any evidence will be sufficient to require a halting of proceedings and a separate determination on competency would produce unreasonable results not anticipated by the Legislature. Such a construction necessitates that a judge conduct a competency hearing on the basis of even the most insubstantial and inconsequential evidence and where no reasonable grounds exist for him to doubt the present mental capacity of the accused. The burden thus thrust upon trial courts, and the potential for abuse of the statute by defendants feigning mental illness, is evident. We do not believe the Legislature intended to mandate such an interruption of a trial on the merits in response to baseless claims of incompetency but only in cases where evidence on incompetency becomes so manifest as to raise a bona fide doubt."

also *Ramsey v. State*, 563 S.W.2d 616, 618 (Tex.Cr.App.1978). And in *Garcia v. State*, 595 S.W.2d 538, 541 (Tex.Cr.App.1980), also extant at the time of the instant trial, it was written:

> "Once a court decides to hold a judicial inquiry into competency, however, more formal evidentiary procedures are required. The court can no longer rely on 'evidence ... from any source.' This restriction is implicit in Article 46.02(2)(b) *and in the very essence of a hearing.* Moreover, it is consonant with the statutory pattern that requires progressively greater formalities as a defendant satisfies the conditions for obtaining a jury determination of the competency issue.
>
> "At the close of a judicial inquiry into competency, the trial court must determine whether evidence exists to support a finding of incompetency to stand trial. See Article 46.02, Sections (2)(b) and (4)(a). When this court reviews a trial court's determination of this issue, the applicable standard is whether the trial court abused its discretion. *Auldridge v. State*, 533 S.W.2d 821 (Tex.Cr.App. 1976); *Noble v. State*, 505 S.W.2d 543 (Tex.Cr.App.1974)."

Then along came *Sisco v. State*, 599 S.W.2d 607 (Tex.Cr.App.1980), a panel opinion of this Court with one judge writing the opinion, one judge concurring in the result, and with one judge dissenting. *Sisco* held that in determining, *after hearing in advance of trial on the merits* (§ 2(a) of Art. 46.02) whether there was evidence to support the finding of incompetency to stand trial, the trial court was required to assay only evidence tending to show incompetency putting aside all competing indications of competency, to find whether there was some evidence, a quantity more than none or scintilla, that rationally led to the conclusion of incompetency; that where the trial court there based its determination on competing medical report of competency the trial court applied an improper standard. The panel rejected the "bona fide doubt in the mind of the trial judge" standard mentioned in *Johnson* as it applied to hearings before the court in advance of trial to determine if there is to be a separate jury trial on the issue of competency to stand trial. In such hearings under Article 46.02, § 2(a), supra, the *Sisco* court held that "in determining whether the evidence raised the issue for submission, it must be viewed in the light most favorable to the party with the burden of securing the finding, *disregarding contrary evidence and inferences.*" (Emphasis supplied.)

In *Williams v. State*, 663 S.W.2d 832 (Tex.Cr.App.1984), this Court in a divided 5 to 4 decision adopted the *Sisco* standard as applicable to hearings during the trial (§ 2(b) of Article 46.02) as well as to hearings in advance of the trial (§ 2(a) of Article 46.02). *Johnson*, supra, and its progeny were overruled.

While the trial judge in the instant case acted in accordance with case law and the interpretation of the statute at the time, his refusal to empanel a jury for a competency hearing runs afoul of the *Sisco—Williams* cases since Dr. Lett's testimony constituted "some evidence."

■ In accordance with the *Sisco—Williams* standard the cause is remanded to the trial court for a jury to be empaneled to determine appellant's competency (at the time of the instant trial) to stand trial. *Brandon v. State*, 599 S.W.2d 567, 573 (Tex.Cr.App.1979), vacated on other grounds, 453 U.S. 902, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981); *Caballero v. State*, 587 S.W.2d 741 (Tex.Cr.App.1979). We recognize the problems inherent in making a retrospective determination of the competency of an accused, *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), including passage of time, the availability of present recollection of any expert witnesses who previously testified, etc. *Pate v. Robinson*, supra; *Brandon v. State*, supra. However, such a determination can be made within the limits of due process depending upon the quality and quantity of the evidence available. *Brandon v. State*, supra.

We abate the appeal and remand the cause to the trial court to empanel a jury

within ninety (90) days to determine whether appellant was competent to stand trial when he was tried in 1980. A recording of that proceeding shall be prepared and transmitted to this Court for further disposition.

It is so ordered. To prevent the abatement from being an exercise in futility we will examine the other points of error.

In one point of error appellant contends that the trial court erred in overruling his challenge for cause to venireman Henry Dove.

During voir dire examination Dove revealed that news media coverage of appellant's arrest piqued his interest because he recognized the appellant as a person who "worked for a friend in Balch Springs"; that thereafter he had discussed the matter with his friends and his family. Dove specifically recalled from the telecasts that the appellant was accused of more than one murder, and in one televised newscast the appellant appeared on the screen and spoke; that he (Dove) seemed to recall that appellant had said something about "he was glad it was over. He wanted to pay for his mistakes or something to that effect."

Upon examination by appellant's counsel the record reflects:

"Q. Okay, Mr. Dove, would you say that it would be very difficult to put it completely out of your mind?

"A. No, I wouldn't say that."

Upon being questioned by the prosecutor, Dove answered that he could set aside what he had heard about the case and base his verdict upon the evidence. He stated that he didn't think newscasts would affect him "not one bit."

The record further reflects questioning by the prosecutor:

"Q. When you saw those articles and the TV coverage, so on and so forth, wouldn't it be kind of fair to say that you kind of made your mind up about whether or not they had the right man and that sort of thing?

"A. No, sir, because *I don't believe half of what you see on TV or hardly anything that you read in the newspaper anymore.*

"Q. After reading these television—or seeing these television articles and reading these newspaper accounts, *you never once sat back and said to yourself, 'Well, he must be guilty or he wouldn't have made the statements?'*

"A. *No. I don't see how anyone could do that. I wouldn't do it, I know.*

"Q. *You never, ever formulated even the sightest opinion in that regard?*

"A. *Well, I didn't form any opinion one way or the other. No.*

"Q. *Absolutely not?*

"A. *No."* (Emphasis supplied.)

At the conclusion of the interrogation of venireman Dove, the appellant challenged him for cause. The challenge was overruled. Having exhausted his peremptory challenges, appellant requested an additional peremptory challenge and it was granted. Appellant used it to strike venireman Dove.

Thereafter, following the voir dire examination of venireman James Ellis, the appellant requested still another peremptory challenge claiming Ellis was objectionable to him. There was no challenge for cause to Ellis. The court denied the request. Ellis served as foreman of the jury.

■ The conduct of voir dire examination must rest largely within the sound discretion of the trial court. *Weaver v. State,* 476 S.W.2d 326 (Tex.Cr.App.1972); *Abron v. State,* 523 S.W.2d 405 (Tex.Cr.App.1975); *Moore v. State,* 542 S.W.2d 664 (Tex.Cr.App.1976), cert. den. 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266. See Article 35.21, V.A.C.C.P.

■ A prospective juror or venireman is subject to being excused if he has a bias or prejudice against the accused or has formed a conclusion as to the guilt of the accused that would influence his verdict. Article 35.16(a)(9) and (10), V.A.C.C.P. Any juror who can put aside any bias,

prejudice or conclusion of guilt and base his verdict on the evidence presented in court may serve on the jury in the trial court's discretion. See *Von Byrd v. State,* 569 S.W.2d 883, 890 (Tex.Cr.App.1978). From an examination of the voir dire of the venireman Dove it cannot be said that the trial court erred in overruling the challenge for cause. Even if it can be argued that the court erred in failing to sustain the challenge for cause, the court granted appellant an additional peremptory challenge and it was used to strike Dove. Later appellant stated venireman Ellis was objectionable but there was no challenge for cause. He requested an additional peremptory challenge which was refused. Appellant does not point to a good challenge for cause which was erroneously overruled by the trial court for which he did not receive an additional peremptory challenge. See *Powers v. State,* 497 S.W.2d 594 (Tex.Cr.App.1973). Appellant challenges only the ruling on Dove, which we have concluded was rightfully overruled and for which he nevertheless received an additional challenge. We find no merit in appellant's ground of error. See and cf. *Barefoot v. State,* 596 S.W.2d 875, 881 (Tex.Cr.App. 1986), cert. den. 453 U.S. 913; *Hernandez v. State,* 563 S.W.2d 947 (Tex.Cr.App.1978); *Wolfe v. State,* 178 S.W.2d 274 (Tex.Cr. App.1944).

In his second point of error appellant contends the "trial court erred by admitting into evidence the written confession of the appellant because such confession was a fruit of the appellant's unlawful confinement."

Earnest Graf owned a flea market in Dallas County. On May 5, 1980, he and his son spent the night in the building because of previous burglaries. Around midnight Graf, armed with a shotgun, apprehended appellant as he gained entry through the roof. Police were called and appellant was taken to the Dallas City jail where he was advised of his rights.

Article 14.01, V.A.C.C.P., provides in part:

"A peace officer *or any other person,* may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony...." (Emphasis supplied.)

It is obvious that appellant was validly arrested for the felony offense of burglary. We do not understand appellant to contend otherwise.

While legally confined in the Dallas City jail Balch Springs police discovered that the palm print and fingerprint found inside a paper bag at the scene of the instant murder matched those of the appellant. After securing an arrest warrant for the murder of the deceased, officers travelled to Dallas and picked up appellant and transported him to Balch Springs for interrogation.

Police Chief Holland of Balch Springs read appellant his *Miranda*[5] rights, and appellant indicated he understood his rights. When told he had the right to have a lawyer present, appellant responded that he "didn't like lawyers and he didn't have any use for lawyers and all a lawyer would do was screw things up." Approximately 45 minutes after he arrived at the Balch Springs Police Department, appellant was taken before a magistrate and again informed of his *Miranda* rights including the right to counsel. See Article 15.17, V.A.C. C.P.

Appellant was then taken to a room where Texas Ranger Cummings identified himself as an officer, pointed out the warnings which had been read to appellant, and asked if appellant would like to talk to him and Lt. Snead of the Balch Springs Police Department. Appellant agreed. After some general conversation, the officers told appellant they knew he killed the deceased. He denied it. When told of the palm and fingerprints, appellant said, "I did it. I killed her...." and agreed to give a written statement. Appellant signed the written statement in the presence of two witnesses.

It was this confession which was introduced at trial over objection that Balch

---

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.   1602, 16 L.Ed.2d 694 (1966).

Spring police had illegally arrested appellant since the affidavit supporting the arrest warrant did not reflect probable cause.

The affidavit in relevant part stated:

"PERSONALLY APPEARED before me the undersigned authority this affiant, who after being by me duly sworn, deposes and says your Affiant has good reason to believe and does believe that one Danny Lee Barber hereinafter styled Defendant, heretofore on or about the 9th day of October A.D. 1979 in the County of Dallas and State of Texas, did unlawfully then and there intentionally and knowingly cause the death of an indiviual (sic), Janie Louise Ingram, by beating her with his fist and unknown objects; and the said Danny Lee Barber did then and there intentionally cause the death of the said Janie Louise Ingram in the course of committing the offense of burglary to wit; Kentech AM/FM Digital Clock Radio, (1) Large brown leather purse with shoulder strap, and unknown brand name of calculator."

Appellant contends the affidavit "recites nothing more than a mere conclusion" and does not reflect probable cause. See *Barnes v. Texas*, 380 U.S. 253, 85 S.Ct. 942, 13 L.Ed.2d 808 (1965); *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); *Evans v. State*, 530 S.W.2d 932 (Tex.Cr.App.1975).

The State contends that the appellant was in legal custody by virtue of a valid arrest in the Graf burglary case, and regardless of the sufficiency of the above quoted affidavit, his confession was not obtained as a result of an illegal arrest for murder and no error is shown. See *Simpson v. State*, 603 S.W.2d 862 (Tex.Cr.App.1980). See also *Fierro v. State*, 706 S.W.2d 310, 314 (Tex.Cr.App.1986); *Jacobs v. State*, 681 S.W.2d 119, 122 (Tex.App.-Houston [14th] 1984), pet. ref'd.; *Mitchell v. State*, 669 S.W.2d 349, 350 (Tex.App.-Houston [14th] 1984) (no pet. hist.).

■ Further, a confession, otherwise shown to have been voluntary, is not rendered inadmissible by the fact its author was under arrest or in custody at the time even though the arrest may have been under invalid process or without any process or legal right absent a causal connection between invalid arrest and confession. *De-Bolt v. State*, 604 S.W.2d 164, 167 (Tex.Cr.App.1980); *Hamel v. State*, 582 S.W.2d 424, 427 (Tex.Cr.App.1979); *Mann v. State*, 525 S.W.2d 174 (Tex.Cr.App.1975); *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr.App.1975), aff'd 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).

There is no evidence that the burglary charge was used as a pretext to arrest appellant on the capital murder charge, as appellant was not a suspect in this case until after he was arrested. *Hooper v. State*, 533 S.W.2d 762, 767 (Tex.Cr.App. 1976) (Opinion on Appellant's Motion for Rehearing), and cases cited therein.

In *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), the United States Supreme Court wrote:

"Thus, even if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' [371 U.S. 471 at 486, 83 S.Ct. 407 at 416, 9 L.Ed.2d 441]. *Wong Sun* thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment."

In determining whether a confession given following an illegal arrest is sufficiently attenuated to permit the use of the confession at trial, the Supreme Court identified the following factors to be considered in making this determination:

(1) whether *Miranda* warnings were given;

(2) the temporal proximity of the arrest and the confession;

(3) the presence of intervening circumstances; and

(4) the purpose and flagrancy of the official misconduct.

See also *Taylor v. Alabama*, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *Green v. State*, 615 S.W.2d 700 (Tex.Cr. App.1980), cert. den. 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258; *Bell v. State*, 724 S.W.2d 780 (Tex.Cr.App.1986); *Self v. State*, 709 S.W.2d 662, 666 (Tex.Cr.App. 1986).

In the case at bar the appellant was given the *Miranda* warnings twice concerning the instant charge prior to giving the confession and these warnings were on the statement which appellant signed. Earlier he apparently had been given similar warnings in connection with the Graf burglary. In *Brown* the Supreme Court made clear that *Miranda* warnings were insufficient standing alone to attenuate the taint of an arrest in violation of the Fourth Amendment. However, the Court observed that *Miranda* warnings are an important factor in determining whether the confession was obtained by exploitation of an illegal arrest. 422 U.S. at 603, 95 S.Ct. at 2261. See also *Taylor v. Alabama*, 457 U.S. at 687, 690, 102 S.Ct. 2664, 2666, 73 L.Ed.2d 314, 319 (1982).

With regard to the second factor, the temporal proximity of the arrest and confession, Chief Holland testified that he directed his criminal investigator, Sergeant Kuhn, to go to the Dallas County Courthouse to obtain a warrant and then to pick up the appellant and bring him to Balch Springs. Kuhn took custody of appellant about 10:30 or 10:45 p.m. Kuhn arrived with appellant at the Balch Springs Police Department shortly after 11:00 p.m on Tuesday, May 6, 1980.[6] Appellant was immediately placed in an interrogation room and was read his rights at 11:24 p.m. by Chief Holland. Appellant appeared at 11:36 p.m. before a magistrate and was again given his *Miranda* warnings.

At 11:54 p.m., Texas Ranger Fred Cummings went into the interrogation room, along with Lieutenant Snead of the Balch Springs Police Department. They questioned the appellant, giving him a break at 12:27 a.m. until 12:36 a.m. on May 7, 1980. At 12:36 appellant indicated in response to the question by Cummings that he would like to make a written statement in the case. This part of the interview, with Cummings transcribing what appellant was saying, continued until 1:17 a.m. During the time from then until 4:20 a.m., when appellant signed the confession, the officials involved were transcribing notes and typing and retyping the confession. From the time appellant was arrested until the time of his signed confession approximately seven and one-half hours had elapsed, although from the time appellant arrived at the Balch Springs Police Department until the time the transcribing of the statement began, only about one and one-half hours had passed.[7] Justice Stevens, concurring in *Dunaway*, concluded the temporal relationship between the arrest and the confession may be an ambiguous factor. 442 U.S. at 218, 99 S.Ct. at 2260. And only recently in *Bell v. State*, 707 S.W.2d at 52, this Court wrote: "The second element, temporal proximity of the arrest and the confession, is generally not a strong determining factor per se,...." Nevertheless, the time factor clearly falls on appellant's side of the ledger on the question of taint.

With regard to the third factor, we find that after the arrest and the giving of the initial *Miranda* warnings in connection with the murder charge he was taken before a magistrate. See Articles 14.06 and 15.17, V.A.C.C.P. The magistrate again advised him of his rights and gave him the *Miranda* warnings. There was an intervening circumstance.

■ The fourth factor is the purpose and flagrancy of the official misconduct. In *Brown* it is observed that the Supreme

6. The officer who transported appellant from Dallas to Balch Springs testified that the entire trip took about three hours. This included driving to the courthouse, the obtaining of an arrest warrant, taking custody of the appellant and the return to Balch Springs in Dallas County.

7. The time span involved in *Brown, Dunaway,* and in our *Green* and *Self* cases was approximately two hours.

Court, after noting the *Miranda* warnings were not the only factor to be considered, wrote:

"The temporal proximity of the arrest and the confession, the presence of intervening circumstances ... and *particularly,* the purpose and flagrancy of the official misconduct are all relevant. See *Wong Sun v. United States* 371 U.S. at 491, 83 S.Ct. at 419." (Emphasis supplied.)

Thus the importance of the fourth factor is clearly indicated.

The instant case is a far cry from the fact situations in *Brown, Dunaway, Taylor* and our case of *Green.*

"... *Brown* is an example of·flagrant police conduct. The arrest there was made solely on the basis of an unsubstantiated tip which identified Brown only as an acquaintance of a murder victim. He was not a suspect at the time. The officer broke into Brown's apartment, searched it, and when Brown was climbing the stairs to his apartment, he was accosted by three plainclothes officers pointing guns at Brown. This was without warrant or probable cause. The officers later testified they arrested Brown for the purpose of questioning him as part of their murder investigation. He was arrested and taken to the police station, where he gave a confession. 'The manner iñ which Brown's arrest was effected gives the appearance of having been calculated to cause surprise, fright and confusion.' *Brown,* 422 U.S. at 606, 95 S.Ct. at 2262.

"In *Taylor* the Court observed that '[T]his case is a virtual replica of both *Brown* and *Dunaway.* ... In this case as in *Dunaway* the police effectuated an investigatory arrest without probable cause based on an uncorroborated informant's tip, and involuntarily transported petitioner to the station for interrogation in the hope that something would turn up.'" *Self v. State,* 709 S.W.2d 662, 667 (Tex.Cr.App.1986).

In the instant case, without reiterating the facts, the appellant was in legal custody on another charge, the officers never-

theless sought and obtained an arrest warrant. There was probable cause even if it can be argued that it didn't all make its way into the affidavit for the arrest warrant. The arrest here had no "quality of purposefulness." Under the circumstances we conclude that the police did not engage in purposeful and flagrant conduct.

In *Self v. State,* supra, 709 S.W.2d at p. 668, this Court stated:

"Justice Powell, concurring in *Brown,* referred to the factors as 'the *general* factors.' (Emphasis added.) Justice Rehnquist, dissenting in *Dunaway,* referred to the factors as the 'several factors.' And in its opinions the Supreme Court has never assigned equal weight to each of the factors to be considered in determining whether inculpatory statements were sufficiently a product of free will to be admissible under the Fourth Amendment. Given the deterrent purposes of the exclusionary rule of the Fourth Amendment and of Article 38.23, V.A.C.C.P., the fourth factor, the purpose and flagrancy of the police conduct, may be the most important factor of the four which the Court has never said were exclusive.

"Further, it has been said:

" 'The question whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single fact is dispositive.' *Brown,* 422 U.S. at 603, 95 S.Ct. at 2261. 'The "question" of attenuation inevitably is largely a matter of "degree" and thus application of the test is "dependent upon the particular facts of each case." ' 3 La Fane, *Searches and Seizures,* § 11.4(a), p. 616 (1978). See also Comment, 31 U.Miami L.Rev. 615, 620 (1977)."

■ In the instant case appellant was in legal custody at the time of arrest. There was no warrantless arrest. The officers made the effort and obtained an arrest warrant, although the affidavit is now questioned. Nothing indicates that appellant's arrest was violent or designed to "cause surprise, fright and confusion." Another factor, the *Miranda* warnings

were given several times. There was an intervening circumstance in that appellant appeared before a magistrate and given one set of the warnings. The confession was taken some seven or so hours after arrest and the conduct of the police was not purposeful and flagrant, a vital consideration. When all the factors are considered together, we conclude the taint of the arrest, if illegal, was overcome. The trial court did not err in admitting the confession into evidence on the basis urged. See *Coleman v. State*, 643 S.W.2d 947, 949 (Tex.Cr.App.1982). Appellant's point of error is overruled.

Next appellant contends the "trial court erred by instructing the jury they could convict the appellant upon a theory not plead in the indictment."

Appellant contends that under the court's charge the jury was authorized to convict him if they found that he killed the deceased after entering her residence and robbing her, a theory not plead in the indictment. Appellant calls attention to his objection to that portion of the charge stating " 'Robbery' is a felony offense under the laws of this state."

In pertinent part, the indictment returned against appellant in the instant case alleges that appellant did

"... then and there intentionally cause the death of Janie Ingram, an individual, hereinafter called deceased, by striking her in the head and face with a length of pipe and by striking her in the head and face with a blunt instrument, the exact nature and description of which is unknown to the grand jury, and the said defendant did then and there intentionally cause the death of the deceased while the defendant was in the course of committing and attempting to commit the offense of Burglary, of the habitation of the deceased...."

In the abstract or definitional portion of the charge, the trial court gave the following instructions, among others:

"A person commits murder when he intentionally causes the death of an individual.

"2.

"Our law provides that a person commits capital murder when such person intentionally causes the death of an individual while such person is in the course of committing or attempting to commit the offense of Burglary.

"3.

"A person commits burglary within the meaning of these instructions if, without the effective consent of the owner, he enters a habitation with intent to commit a felony or theft or enters a habitation and commits or attempts to commit a felony or theft."

The court also charged on the terms "effective consent," "enter," "habitation," "theft," "attempt," "individual" and the charge on "burglary" set out above.

In applying the law to the facts, the jury was instructed:

"Now, if you find from the evidence beyond a reasonable doubt that on or about the 8th day of October, 1979, in the County of Dallas and State of Texas, the defendant, DANNY LEE BARBER, did while in the course of committing or attempting to commit the offense of Burglary of a Habitation, as that term has been hereinbefore defined, intentionally cause the death of Janie Ingramn by striking Janie Ingram in the head and face with a length of pipe, intending thereby to cause the death of the said Janie Ingram, then you will find the defendant guilty of capital murder, as charged in the indictment, and you will make no finding in your verdict as to punishment."

The evidence shows that the appellant committed the offense of theft after entering the residence. And appellant told the victim's brother, after his arrest, that he did not intend to kill her but only to "rob" her.

■■■ The oral objection to the court's charge was "The Defendant Barber objects to the Court's charge in that it sets out that robbery is a felony offense under the laws of this state...."

Article 36.14, V.A.C.C.P., requires that the defendant present his objection to the court's charge "distinctly specifying each ground of objection." Here the objection to the charge does not meet the statutory requirement, and the contention here on appeal that the court was authorizing the jury to convict upon a theory not plead in the indictment was never presented to the court. Further, appellant never obtained a ruling on his objection to the charge.

■ Appellant cites *Bridges v. State*, 574 S.W.2d 143 (Tex.Cr.App.1978), an aggravated robbery prosecution. We reversed *Bridges* because the trial court, in applying the law to the facts, authorized the jury to convict under any mode or theory of aggravated robbery, see V.T. C.A., Penal Code, §§ 29.02 and 29.03, when only one theory of aggravated robbery was alleged in the indictment. *Bridges* is distinguished from the instant case where the court in applying the law to the facts authorized conviction only on the theory alleged in the indictment—capital murder in the course of attempting to commit the offense of burglary of a habitation. In the abstract portion the court defined burglary of a habitation and in part pointed out that the offense required that the habitation be entered "with intent to commit a felony or theft *or* enters a habitation and commits or attempts to commit a felony or theft."

In view of the evidence that appellant stated he had intent to rob, the court apparently informed the jury that robbery was a felony offense. In fact, appellant's counsel argued that if anything appellant was in the course of committing robbery and not burglary as alleged and was not guilty. No error is presented under all the circumstances presented. The point of error is overruled.

Still further, appellant contends in another point of error the "trial court committed fundamental error by authorizing the jury to convict the appellant upon a theory not contemplated or permitted by law."

There was no objection to the court's charge on this basis, so the appellant urges fundamental error. The basis of the argument advanced by appellant is that the trial court's instructions permitted the jury, if it desired, to use the murder to prove the burglary of a habitation and then reuse the same murder as the basis for a guilty verdict for the offense of capital murder. Appellant argues that since the court defined burglary in the broadest possible terms, it authorized the jury to find that the appellant committed the burglary, as charged in the indictment, if it believed he entered the habitation and then committed a felony, V.T.C.A., Penal Code, § 30.02(a)(3). This he contends, allowed the jury to consider and use the murder of Janie Ingram as the felony committed to establish the burglary. He claims the concept of using the murder that serves as the core of a capital murder indictment as the underlying basis to elevate it from murder to capital murder is a bootstrapping technique, and "that this is no more acceptable than the use of a felonious assault which results in a death as the felony supporting a felony-murder charge. *Garrett v. State*, 573 S.W.2d 543 (Tex.Cr. App.1978)." In *Garrett* it was held that the felony-murder rule dispenses with any inquiry into mens rea accompanying the homicide itself, that the underlying supplies the necessary culpable mental state. V.T.C.A., Penal Code, § 19.02(a)(3). And under such felony-murder rule the felony that eliminates quality of intent must be one that is independent of the homicide, and of the assault merged therein. Appellant recognizes that *Garrett* involved the felony murder rule and not a capital murder prosecution.

V.T.C.A., Penal Code, § 19.03, provides in part:

"(a) A person commits an offense if he commits murder as defined under Section 19.02(a)(1) of this code [8] and

"(2) the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, *bur-*

---

**8.** Sec. 19.02(a)(1) provides:
"(a) A person commits an offense if he:

"(1) intentionally or knowingly causes the death of an individual; ...."

*glary,* robbery, aggravated rape, or arson; ...." (Emphasis supplied.)

V.T.C.A., Penal Code, § 30.02 (Burglary), provides in part:

"(a) A person commits an offense if, without the effective consent of the owner, he:

"(1) enters a habitation, or a building (or any portion of a building) not then open to the public, *with intent to commit a felony or theft;* or

"(2) remains concealed, *with intent to commit a felony* or theft, in a building or habitation; or

"(3) enters a building or habitation and *commits or attempts to commit a felony or theft....*"[9] (Emphasis supplied.)

The Legislature has the authority to define crimes and fix penalties. Article III, § 1, Tex.Const.; *McNew v. State,* 608 S.W.2d 166, 174 (Tex.Cr.App.1980) (Opinion on Appellant's Motion for Rehearing). Appellant does not argue the Legislature was without authority to define the crimes above. Appellant's complaint goes to the court's charge wherein the court instructed the jury in the language of the statute above. He does not explain how the court should have charged to avoid the error now claimed on appeal. Since the error, if any, was in the court's charge, we turn to *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Cr.App.1984) (Opinion on State's Motion for Rehearing).

Under *Almanza v. State,* supra, if there is no objection to an error in the jury charge, a fundamental error standard attaches. A reversal will obtain only if the error is "so egregious and created such harm" that he "has not had a fair and impartial trial ... in short egregious harm." 686 S.W.2d at 171. See Article 36.19, V.A.C.C.P.

██ Since appellant did not object to the charge on the basis now urged this more stringent prong of the *Almanza* holding applies. In applying the standard of review established, we must determine the degree of harm in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel. We have done this. In examining the evidence, we find that appellant told the victim's brother, Roy Clowers, "Buddy, I am sorry. I killed your sister. I broke in to rob her. She surprised me and it scared the shit out of me." In his written confession appellant stated on the night in question about 11 p.m. he went to the victim's house remembering she had paid him $10.00 for cutting down a tree. In the yard he picked up a piece of a pipe, a foot and a half long, for the purpose of breaking into the house but found a door unlocked. He entered the house, and when he turned around, he "was facing someone who said 'Who is it?' ... started screaming. She wouldn't be quiet." Appellant stated he hit "her with the pipe" several times. "I turned on the light and saw it was Janie Ingram that I had hit." Appellant then related how he went into the bedroom and found a purse

---

9. Under former Article 1389, V.A.P.C. (1925), the offense of burglary was constituted by entering a house by force, threats or fraud or remaining concealed therein, etc., "with intent to commit a felony or theft." The offense was complete when the entry was made with the requisite intent. Article 1399, V.A.P.C. (1925), provided that if a person committed burglary and after entry committed any other offense he could be prosecuted for burglary and also for the other offense. Article 1400, V.A.P.C. (1925), provided that if burglary was effected for committing one felony and upon entry another felony was committed the accused could be punished for any felony so committed as well as for the burglary.

And it was held under the former code that a previous conviction for burglary will not bar a subsequent conviction for theft of property taken from the house alleged to have been burglarized and vice versa. 4 Branch's Anno.P.C., 2nd Ed., § 2545, p. 879. And an acquittal of one will not bar prosecution for the other. *Id.* at p. 880.

In the Practice Commentary to § 30.02, supra, it is written:

"The express provision in the old code, art. 1399, that a burglar could be convicted and punished for both the burglary and the object offense has been discarded. Whether a defendant may be punished separately for the burglary and for offenses committed subsequent to the entry will be determined by traditional jeopardy principles. See Tex.Prop.Pen. Code ch. 3 (West 1970)."

It is observed that in enacting § 30.02 the Legislature added Subsection (a)(3) to the definition of burglary.

with $40.00 in it, that he later dragged the victim to the bedroom and tried to have sex with her but couldn't "so I used my finger on her." He later threw the purse off the bridge in Crawford Park. We further have considered the jury charge at the guilt stage of the trial. And in examining the jury argument at that stage of the trial we find the State did not argue that the finding of a burglary depended upon the commission of a felony, the murder.[10] The State argued that based on the evidence the burglary of the habitation was shown when the entry was made with the intent to commit theft. Appellant's counsel argued that it was not a burglary but a robbery and the State's proof failed to meet the allegations of a burglary.

After examining the entire record, if we assume there was error in the charge, unobjected to and fundamental, we cannot say, applying the *Almanza* test that the error was so egregious and created such harm as to deny the appellant a fair and impartial trial. The point of error is overruled.

▆▆▆ In four points of error appellant complains of the admission into evidence at the penalty stage of the trial of four confessions as to unadjudicated extraneous offenses. Three of these confessions were to other murders and the fourth was to an attempted murder. The three murder confessions were taken on May 7, 1980 at the Balch Springs Police Department after the confession to the instant offense, and the attempted murder confession was taken on May 9, 1980, at the same place. Appellant's complaint as to the admission of each of these confessions at the penalty stage of the instant capital murder case was that each was the fruit of an unlawful arrest. This is the same complaint advanced against the admission of the confession as to the instant offense. For the same reasons we rejected that complaint or contention we likewise overrule these points of error. It should be borne in mind that under Article 37.071, V.A.C.C.P.,

at the "sentencing" phase of the trial of a capital murder case and in the discretion of the trial court evidence "relevant to sentence" may be introduced. Evidence of unadjudicated extraneous offenses introduced at the penalty stage of the trial of a capital murder prosecution does not render the proceedings fundamentally unfair or deprive the defendant of due process or equal protection, absent a showing of unfair surprise. *Williams v. State*, 622 S.W.2d 116 (Tex.Cr.App.1981), cert. den. 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876; *Smith v. State*, 676 S.W.2d 379 (Tex. Cr.App.1984), cert. den. 471 U.S. 1061, 105 S.Ct. 2173, 85 L.Ed.2d 409. See also *Smith v. State*, 683 S.W.2d 393 (Tex.Cr.App.1984); *Sharp v. State*, 707 S.W.2d 611 (Tex. Cr.App.1986).

The point of error is overruled.

Further disposition of this cause will be made following satisfactory completion of the abatement ordered herein.

### ADDENDUM

For the reasons he expressed in the concurring opinion that he filed in *Barnard v. State*, 730 S.W.2d 703 (Tex.Cr.App. No. 1987), TEAGUE, J., agrees that appellant's fifth point of error should be overruled, but not for the reasons given by the majority opinion. With this addendum, TEAGUE, J., joins the remainder of the majority opinion.

CAMPBELL, J., concurs in the result.

McCORMICK, Judge, dissenting.

Because I can find no evidence in the record which would support a finding of incompetency in this case, I respectfully dissent to the remand.

As the majority opinion demonstrates, Dr. Lett's testimony that appellant was incompetent was based entirely upon Dr. Lett's erroneous conclusions that people don't shoot fish with a bow and arrow and

---

10. The appellant calls our attention to an argument lifted out of context at the penalty stage of the trial, not the guilt stage. We do not consid-

er this argument material and further the argument was made after the jury reached its decision that appellant was guilty of capital murder.

**838**

that the Dallas Police would have searched the trunk of appellant's auto.

WHITE, J., joins in this opinion.