**Jessie Lee NOBLE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 47219.**

Court of Criminal Appeals of Texas.

Feb. 20, 1974.

Don R. Stodghill, Leon A. Smith, Rockwall, for appellant.

W. I. Lofland, County Atty., Rockwall, Jim D. Vollers, State's Atty., Buddy Stevens, Asst. State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for robbery by assault with a deadly weapon. The punishment was assessed by the jury at forty (40) years' confinement in the Texas Department of Corrections.

Appellant's first conviction for this offense was reversed by this court because

of the admission in evidence of items obtained as a result of a statement given without the warning required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Article 15.17, Vernon's Ann.C.C.P. See Noble v. State, 478 S.W.2d 83 (Tex.Cr.App.1972). That error was avoided at appellant's second trial.

We are confronted at the outset with the procedure used in passing upon the competency to stand trial utilized in the instant case.

Following the reversal of the first conviction and prior to the second trial, appellant's counsel filed a motion for a psychiatric examination of the appellant on August 2, 1972. Said motion was granted and on August 4, 1972, Dr. H. F. Tauber's letter to the trial court concerning his examination of the appellant was filed among the papers of the cause. The essence of the letter is as follows:

"Mr. Noble undoubtedly is mentally ill and is suffering from a Schizophrenia, Paranoid Type. He is exhibiting the typical symptoms of this illness like grandiosity, a mixture of hostile paranoid behavior alternating with a superficial extremely friendly attitude, delusions of persecution as well as grandeur, and extreme talkativeness. He denied hallucinations and was very inappropriate throughout the entire examination. Mr. Noble was rambling continuously, and some of his delusional grandiose ideas were reflected by his statement that he, himself, was a criminal lawyer, a preacher, as well as a teacher.

"There is no doubt that Mr. Noble is suffering from a mental illness for many years, and despite the severity of the symptoms at this time he is capable of understanding the pending court procedures. He will make it difficult to assist his own lawyer in his defense, but generally speaking he is capable of aiding in his own defense. Summarizing Mr. Noble knows the difference between right and wrong, is capable of aiding in his own defense, and despite his severe mental illness he has to be termed sane in a legal sense."

On August 7, 1972, appellant's counsel filed a motion entitled "Motion To Try Defendant's Present Sanity on Main Trial." Said motion alleged the appellant was "of unsound mind at this time" and "at the time of the alleged commission of the offense" and prayed the court "hear evidence as to the present and past insanity of the Defendant and declare a mistrial because of such present insanity."

It is not reflected whether such motion was ever called to the trial court's attention.

At the trial the appellant called Dr. Tauber as a witness, who related that the appellant was suffering from schizophrenia, paranoid type of a serious nature and that he had been suffering from this illness for "a number of years."

At this point in the doctor's testimony the appellant made an "outburst" [1] in the presence of the jury. Thereupon, the jury was removed and a motion for mistrial

---

[1] "MR. NOBLE: I object to that, Your Honor. I have got to object to this because the Doctor is incriminating me. I can prove beyond a reasonable doubt. I am a defendant. I am defending my life.
"THE COURT: Go ahead, I am listening.
"MR. NOBLE: I just got out of prison, May 25, 1971. I got a record in the prison, Austin, that my ability of being a criminal lawyer, I went for law; and the statement that this Doctor is making is really incriminating me because by records and by my parents. There's not anything wrong with me. This is some plot that the State is putting against me because there's no State, no Judge, have authorized to have a Doctor examine me, not without my consent. I signed to see a doctor, but I thought it was a medical doctor because my feets. They were interrogated me and I can prove. I think this hear is mostly a frame-up, Your Honor, because I have thirty years sentence on this County here which I was convicted. I mean they were aware of the length, 1971; and my case was reversed on admissible evidence for not reading my rights, Article 15.17; and it was also reversed on admissible evidence which the evidence they are using on me today and yesterday. It's unsufficient."

was made. In connection therewith, the doctor was interrogated and related that appellant's condition would make it "hard to defend him and hard for him to assist." He further testified, "Hypothetically, I could state if he continues outbursts like this during the rest of the trial, I would have to state that he would be unable to assist his own defense."

In other testimony the doctor related the appellant knew the difference between right and wrong and that the outburst may have been calculated to benefit him.

In response to the court's question the doctor testified:

"I sincerely believe that he's capable of defending himself."

The motion for mistrial was overruled and the jury returned. The doctor then testified as follows:

"Q. And now would an outburst such as you have witnessed and the attitude of the defendant make it even harder than perhaps difficult, perhaps to the point of almost impossible?

"A. Yes, sir, at times, it does.

"Q. Okay, so what you are stating that at times it would be impossible for him to aid his lawyer in his defense?

"A. Yes.

"Q. And that's at the present time, today, correct, Doctor?

"A. Yes, sir."

Thereafter, the court, apparently considering the issue of present competency to stand trial was raised, submitted that issue to the jury on the trial on the merits with the conditional submission of guilt or innocence.

In view of the fact situation before us, what this court recently wrote in Perryman v. State, 494 S.W.2d 542 (Tex.Cr.

App.1973), is clearly applicable. There we said:

"In Townsend v. State, Tex.Cr.App., 427 S.W.2d 55, this court approved the language of Van Dusen v. State, 197 Kan. 718, 421 P.2d 197, wherein that court stated:

" 'It is the trial court in whose mind a real doubt of sanity or mental capacity to properly defend must be created before that court is required to order an inquiry solely on its own initiative . . .'

"That the conviction of an accused person while he is legally incompetent violates due process,[1] and that state pro-

[1] Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835; Article 34, Vernon's Ann.P.C.

cedures must be adequate to protect this right is settled.[2] And as was observed

[2] Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815; Ainsworth v. State, 493 S.W.2d 517 (Tex.Cr.App.1973) ; Vardas v. State, Tex.Cr.App., 488 S.W.2d 467; Townsend v. State, supra; Article 46.02, Vernon's Ann.C.C.P.

in Townsend v. State, supra, the Supreme Court:

" ' . . . did not reveal the extent of inquiry to satisfy due process requirements, but it would appear at the minimum that a separate hearing for determination of competency is obligatory though not necessarily a preliminary one. While Pate would not require a jury trial on such issue, it would appear that Texas law would.'

"Recently, in Ainsworth v. State, Tex.Cr.App., 493 S.W.2d 517 (1973), we discussed what is necessary to bring into play the due process requirement of a separate hearing:

" 'An accused is not required to prove actual insanity or incompetency before the trial judge is required to conduct a separate hearing on the matter. If this were the rule, the separate hear-

ing procedure would become meaningless. However, it is necessary that evidence come before the court, from some source, of sufficient force to create in the court's mind reasonable ground for the judge to doubt the competency of the accused to stand trial. Once this occurs, the court should conduct a hearing out of the presence of the jury to determine whether or not there is in fact an issue as to the competence of the accused to stand trial.'

Once this separate inquiry is made out of the jury's presence, the due process requirement is met. If the trial court determines that no such issue exists, his decision will not be disturbed in the absence of abuse of discretion. However, if the issue is found to exist, then Texas law requires the court to halt the proceedings and empanel a separate jury to determine the issue uncluttered by the evidence relevant only to the question of guilt or innocence. Ainsworth v. State, supra; Vardas v. State, Tex.Cr.App., 488 S.W.2d 467; Hefley v. State, Tex. Civ.App., 480 S.W.2d 810; Tonwsend (sic) v. State, supra; Article 46.02, V. A.C.C.P.

"It is clear from the record that the trial judge had grave doubts concerning appellant's competency to stand trial. It is also clear from the record that once the trial judge determined that the issue of incompetency was raised, he did not follow the procedure under Texas law and empanel a jury to determine the issue. Instead, he submitted the issue of present insanity, along with the issue of insanity at the time of the offense and the issue of guilt or innocence, in the same charge. This procedure, whereby the jury is asked to concurrently decide the issues of incompetence and guilt or innocence of the accused, was denounced in Townsend v. State, supra, wherein this court reasoned:

" 'If the only procedure available to an accused is to have the issue of compe-

tency to stand trial (present insanity) submitted to the jury along with the conditional submission of guilt or innocence, might not the jury reach an unanalytical and impressionistic verdict as to competency based on all they had heard?'

427 S.W.2d at page 61. Accord, Vardas v. State, supra. See also Ramirez v. State, 92 Tex.Cr.R. 38, 241 S.W. 1020.

"The procedure followed by the trial court in the instant case was inadequate to insure the appellant a fair trial on the issue of his competency to stand trial (present insanity) uncluttered by that evidence relevant only to the issue of guilt or innocence."

For the same reason, this cause must be reversed.

The judgment is reversed and the cause is remanded.