**Joe Antonio GARCIA, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 61902.**

Court of Criminal Appeals of Texas, Panel No. 2.

March 19, 1980.

---

1. It should be noted that the same judge presided over both hearings.

539

Ronald B. Walker, on appeal only, Victoria, for appellant.

Knute L. Dietze, Dist. Atty., Victoria, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, PHILLIPS and CLINTON, JJ.

## OPINION

PHILLIPS, Judge.

This is an appeal from an order revoking probation. On January 6, 1972, appellant pleaded guilty to the felony offense of possession of marihuana; punishment was assessed at 10 years' probation. On September 21, 1978, appellant's probation was revoked; appellant was sentenced to six years' imprisonment.

At the probation revocation hearing, defense counsel expressed doubt about appellant's competency and filed a written motion for appointment of a psychiatrist. In support of this motion defense counsel presented two witnesses. The court granted the motion and recessed the hearing. During this recess a psychiatrist examined appellant and submitted a report to the court.

When the hearing resumed, the court permitted both sides to introduce evidence on the issue of competency. Although the court's procedures were less formal than contemplated by Article 46.02(2)(b), V.A.C.C.P.,[1] the court clearly conducted a hearing on competency within the meaning of this statute.[2] At the close of this judicial inquiry into competency, the court ruled the evidence insufficient to support a finding of incompetency to stand trial; it refused to impanel a jury. See Article 46.02(4)(a), V.A.C.C.P.[3]

Appellant contends that the court's failure to find the evidence sufficient to impanel a jury on the competency issue constituted error. We agree.

Defense counsel presented four witnesses who testified that appellant was suffering from psychological problems. Appellant's mother testified that her son previously was hospitalized and treated for a nervous breakdown and that his present behavior evidenced a recurrence. Appellant's wife testified that her husband's present behavior was the same as his behavior at the time of his nervous breakdown. Appellant's mother and wife both testified that they had trouble communicating with him.

One of the defense attorneys testified that appellant was "almost to the point of being catatonic." The attorney further testified that defense counsel were unable to discuss the facts and the seriousness of the case with appellant. The attorney also stated that appellant believed he could open the jailhouse doors by tying knots in a string. Because of this irrational belief, the attorney thought appellant "was losing touch with reality."

William Pryor, minister of the First Presbyterian Church in Victoria, testified about his experiences with appellant while visiting him in jail. Reverend Pryor first explained that he had extensive training in the mental health field and had regularly visited at the jail for three years. He then gave the details of a conversation he had with appellant.

Q Did you ever have or did Joe ever have a conversation with you about tying knots into string?

A Yes.

Q And opening jailhouse doors?

A Yes.

Q What was that, Reverend Pryor?

A He thought on the 14th of June that he had been able to tie some strings together in such a manner that they were kind of a magic symbol for him

1. Article 46.02(2)(b) provides:

   If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial.

2. At one point the court made the following statement:

   I want to clarify one thing. The issue of Mr. Garcia's competency is not before the Court. *The question the Court needs to decide is whether or not a jury should be impaneled to determine his competency.* [Emphasis added]

3. Article 46.02(4)(a) provides in part:

   If the court determines that there is evidence to support a finding of incompetency to stand trial, a jury shall be impaneled to determine the defendant's competency to stand trial. . . .

or something that would keep him safe if he touched a certain knot and would open jailhouse doors.

Q Did you take this to be rational behavior?

A No, sir.

Based on this and other behavior, Reverend Pryor concluded that appellant was "out of touch with reality" and "incompetent to act in a rational way."

To rebut the testimony of these four witnesses, which tended to show that appellant was incompetent to stand trial, the State introduced only the testimony of Herbert Arrellano, a jailer. Arrellano testified that he frequently saw appellant at the jail and never observed any unusual behavior. On cross-examination, however, Arrellano admitted that he never had a conversation with appellant.

Q How many conversations a day did you say you had with Mr. Garcia?

A Well—

Q Approximately.

A Well, I see him—I don't have conversations with him, but I do see him at least three times a day.

Q Do you ever have any conversations with him?

A Well, I give him his medication, but really, we don't converse; I just give him the medication.

Q Do you ever have any conversation with Joe Garcia?

A No, I sure don't.

During the judicial inquiry into competency, the court stated that the psychiatrist who examined appellant concluded he was competent to stand trial. The record reflects that the court's decision not to impanel a jury was based on the psychiatrist's conclusion. Nonetheless, the State failed to have the psychiatrist testify about his conclusion. Moreover, the psychiatrist's report was neither admitted into evidence nor included in the record. Although the court referred to the psychiatrist's conclusion, no evidence of this conclusion or its underlying basis was ever admitted.

■ The decision whether to hold a judicial inquiry into competency is distinct from the decision whether to impanel a jury on the competency issue. Statutory provisions require that different evidentiary procedures be followed in making each of these decisions. In this case there was a failure to follow the proper evidentiary procedures, and this failure resulted in error.

■ Article 46.02(2)(b), supra, provides that under certain circumstances a trial court must conduct a hearing to determine whether evidence exists to support a finding of incompetency to stand trial. This Court has held that such a hearing is required only when the evidence is of sufficient force to create reasonable grounds to doubt a defendant's competency. *Johnson v. State*, 564 S.W.2d 707 (Tex.Cr.App.1978). Article 46.02(2)(b) further provides that in deciding whether to hold a judicial inquiry into the competency issue, the court can rely on "evidence of the defendant's incompetency . . . from any source." We have construed this provision to mean that a trial court's decision to hold a competency inquiry can stem "from personal observations, or facts known to [it], or from evidence presented, or by motion of the accused or his counsel, or by affidavit or from any reasonable claim or credible source." *Johnson v. State*, supra (quoting from *Townsend v. State*, 427 S.W.2d 55 [Tex.Cr. App.1968]).

■ Once a court decides to hold a judicial inquiry into competency, however, more formal evidentiary procedures are required. The court can no longer rely on "evidence . . . from any source." This restriction is implicit in Article 46.02(2)(b) and in the very essence of a hearing. Moreover, it is consonant with the statutory pattern that requires progressively greater formalities as a defendant satisfies the conditions for obtaining a jury determination of the competency issue.

■ At the close of a judicial inquiry into competency, the trial court must determine whether evidence exists to support a finding of incompetency to stand trial. See

Article 46.02, Sections (2)(b) and (4)(a). When this Court reviews a trial court's determination of this issue, the applicable standard is whether the trial court abused its discretion. *Auldridge v. State*, 533 S.W.2d 821 (Tex.Cr.App.1976); *Noble v. State*, 505 S.W.2d 543 (Tex.Cr.App.1974).

■ In the present case, in making its determination at the judicial inquiry into competency, the court relied on a psychiatrist's conclusion that was not admitted into evidence. We think this reliance is inconsistent with the more formal evidentiary procedures that a hearing requires. Furthermore, from an appellate perspective, the trial court's informal approach provides an inadequate basis for determining whether it properly exercised its discretion. As an appellate court evaluating a trial court's exercise of discretion, we are unable to consider a psychiatrist's report that was neither admitted into evidence nor included in the record. A mere reference to the conclusion of this report, without more, likewise provides no basis for exercising appellate review. Since this reference is unsupported by any evidence in the record, we decline to consider it in evaluating the trial court's exercise of discretion. *People v. Abney*, 90 Ill.App.2d 235, 232 N.E.2d 784 (1967) (where no psychiatrist testified about the defendant's mental condition and no psychiatric reports were introduced into evidence, the trial court's findings and judgment were not sustained by the record); *Sutton v. State*, 242 S.W.2d 420 (Tex.Cr.App.1951) (matters referred to but not included in the record will not be considered in determining the sufficiency of the evidence).

We now determine whether the record in this case sustains the trial court's decision not to impanel a jury on the competency issue. In making this determination, we exclude from consideration the trial court's reference to the psychiatrist's conclusion.

The testimony of appellant's four witnesses would support a finding of incompetency to stand trial. The only evidence presented by the State, the testimony of a jailer, had little probative value on the competency issue. Since there was no other evidence to rebut the evidence presented by appellant, we hold that the trial court abused its discretion in refusing to impanel a jury.

■ In *Brandon v. State* (Tex.Cr.App., No. 59,348, decided April 25, 1979), where we found that the defendant was denied a fair hearing on his competency to stand trial, we remanded the cause to the trial court with instructions to hold a retrospective competency hearing. In the present case, based on a review of the record and a consideration of the time elapsed since the probation revocation hearing, we conclude that a retrospective competency hearing is feasible. See *Caballero v. State*, 587 S.W.2d 741 (Tex.Cr.App.1979). Accordingly, we remand the cause to the trial court for a retrospective competency hearing.

In addition to his ground of error concerning the issue of competency, appellant raises two grounds of error relating to other matters. In the interest of efficiency, we shall rule on the merits of these two grounds before remanding the cause for a retrospective competency hearing.

In his first ground of error, appellant contends that the trial court erred in permitting an in-court identification of him because this identification was tainted by an impermissibly suggestive photo array. At appellant's probation revocation hearing, Border Patrol Agent Samuel Santana identified appellant as the driver of a car in which 80 pounds of marihuana later was found. Santana testified that he stopped a car at a checkpoint in Brooks County, and while questioning the driver he detected the strong odor of marihuana. When Santana asked the driver to open the trunk of his car, he became argumentative and sped away. The car was recovered shortly thereafter, but the driver had fled on foot.

The record reflects that one or two months after the incident at the checkpoint, Santana identified appellant from a photo array as the driver of the car. Because of our disposition of this ground of error, we need not discuss the circumstances surrounding the photo array.

First, we hold that appellant failed to preserve any error in the admission of the in-court identification. Appellant did not file a written motion to suppress Santana's in-court identification. On the first day of the probation revocation hearing, defense counsel took Santana on voir dire in an attempt to establish the inadmissibility of his in-court identification. The evidence adduced during this voir dire failed to show that Santana's photo identification was based on a suggestive photo array. Consequently, at the conclusion of the voir dire, the trial court properly overruled appellant's objection to Santana's in-court identification. The next day, during the cross-examination of another witness, defense counsel elicited testimony tending to show that the photo array was suggestive. Following this testimony, however, defense counsel failed to renew his objection to Santana's in-court identification or otherwise bring the matter to the trial court's attention. Under these circumstances, we hold that the objection made the preceding day was insufficient to preserve any error.

We also hold that even if error were preserved and the photo array were impermissibly suggestive, Santana's in-court identification had an independent origin. See *Bermudez v. State*, 533 S.W.2d 806 (Tex.Cr.App.1976); *Lucas v. State*, 444 S.W.2d 638 (Tex.Cr.App.1969). Santana, a Border Patrol Agent with 12 years' experience, had the opportunity at the checkpoint to observe the driver at close range for approximately one minute. See *Komurke v. State*, 562 S.W.2d 230 (Tex.Cr.App.1978); *Bermudez*, supra. Some months after the photo array, Santana was at the Brooks County Jail on some unrelated business, and he recognized appellant in a group of eleven prisoners as the driver at the checkpoint. This in-person recognition indicates that Santana's in-court identification originated independently of the photo array. We also note that Santana's in-court identification was positive and unequivocal. Based on the totality of the circumstances, we conclude that Santana's in-court identification was of independent origin. Appellant's first ground of error is overruled.

In his second ground of error, appellant contends that the trial court abused its discretion in excluding evidence which would have allowed him to be resentenced as a misdemeanant under Section 6.01(c) of the Controlled Substances Act.[4] In *Burson v. State*, 511 S.W.2d 948 (Tex.Cr.App.1974), this Court held that a grant of probation is not a pending criminal action as that term is used in Section 6.01(c) of the Controlled Substances Act, and therefore the defendant whose probation was revoked was not entitled to resentencing under that provision. In the situation presented here, the trial court disposed of appellant's case under Article 42.12(8)(a), V.A.C.C.P.,[5] as if there had been a grant of probation. Under our holding in *Burson*, supra, appellant was not entitled to resentencing under the Controlled Substances Act. See *Worley v. State*, 485 S.W.2d 789 (Tex.Cr.App.1972). Consequently, the trial court did not abuse its discretion in excluding the evidence. Appellant's second ground of error is overruled.

The cause is abated and remanded to the trial court to impanel a jury and conduct a competency hearing within 90 days to determine whether appellant was competent to stand trial at the time of his probation revocation hearing in September 1978. See *Caballero*, supra. A record of this proceed-

---

4. (c) In a criminal action pending, on appeal, or commenced on or after the effective date of this Act, for an offense committed before the effective date, the defendant, if adjudged guilty, shall be assessed punishment under this Act if he so elects by written motion filed with the trial court requesting that the court sentence him under the provisions of this Act.

5. Article 42.12(8)(a), V.A.C.C.P., provides in pertinent part:

. . . If probation is revoked, the court may proceed to dispose of the case as if there had been no probation, or if it determines that the best interests of society and the probationer would be served by a shorter term of imprisonment, reduce the term of imprisonment originally assessed to any term of imprisonment not less than the minimum prescribed for the offense of which the probationer was convicted.

544

ing shall be prepared in the manner required by Article 40.09, V.A.C.C.P., and transmitted to this Court for further disposition.

It is so ordered.

CLINTON, Judge, concurring.

That the trial court erred in the method of reaching and in coming to its conclusion that a jury need not be impanelled to determine competency of appellant to stand further hearing, I am certain. But I do have enough doubt about the standard utilized to make that determination, albeit drawn from a majority opinion of the Court En Banc in *Johnson v. State*, 564 S.W.2d 707 (Tex.Cr.App.1978), presently to disassociate myself from its reiteration and application here.

Since 1975, given that it is properly triggered, Article 46.02, V.A.C.C.P., has mandated a hearing in advance of the trial on the merits, § 2(a), and during the trial, § 2(b), alike to determine whether "there is evidence to support a finding of incompetency." That relatively new statutory standard provides "a different method" for raising the issue, certainly in the pretrial situation, as the Court has recognized in *Williams v. State*, 543 S.W.2d 385 (Tex.Cr.App. 1976) and *Ramsey v. State*, 563 S.W.2d 616, 618 (Tex.Cr.App.1978), and, from the same language, I would think in the midtrial situation. Yet, a majority of the Court concluded otherwise in *Johnson v. State*, supra.

I am satisfied that whatever the former tests—and they have been expressed in various terms—the present standard for pretrial determination is that recognized in *Williams* and *Ramsey* rather than "a reasonable doubt" measure.[1] I am not satisfied, however, with the *Johnson* view that, notwithstanding identical legislative language, the former "reasonable doubt" standard remains for a midtrial determination.

With the reservations thus expressed, I concur.

1. In *Sisco v. State*, —— S.W.2d —— (Tex.Cr. App., No. 61,602, delivered February 6, 1980) I identified the early judicially formulated rule and traced legislative and judicial evolution of the various tests used prior to 1975.