Jeffrey **EDWARDS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08–97–00518–CR.

Court of Appeals of Texas, El Paso.

March 18, 1999.

Rehearing Overruled June 23, 1999.

---

Charles Louis Roberts, El Paso, for Appellant.

Jaime E. Esparza, District Attorney, Tom A. Darnold, Assistant District Attorney, El Paso, for the State.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice.

This is an appeal from a conviction for four counts of indecency with a child. The appellant, Jeffrey Edwards, entered an open guilty plea to the trial court, and the court sentenced him to five years confinement in the Texas Department of Criminal Justice—Institutional Division. We affirm the trial court's judgment.

## FACTS

On September 10, 1997, Edwards pleaded guilty to four counts of indecency with a child. The trial court admonished Edwards regarding the range of punishment and Edwards' right to a jury trial. In response to the court's questioning, Edwards stated that he understood these issues. Edwards further responded that he understood there was no punishment recommendation from the State, and that the trial court could sentence him to any punishment within the punishment range. Edwards affirmed that no one had forced him into entering his plea, nor had anyone promised him anything to cause him to enter the plea. He professed that he was satisfied with his counsel's representation and that he felt his counsel had adequately investigated and prepared his case. Moreover, Edwards confirmed that he had read and signed the plea papers in the case which, among other things, stated that there was no punishment recommendation and that no punishment recommendation was binding upon the court. Edwards also signed written admonishments which confirmed that he understood there was no plea bargain recommendation, that he had not been threatened or promised anything to get him to make a guilty plea, and that he was mentally competent and knew what he was doing by entering a plea.

During the State's punishment presentation, Paul Strelzin, principal of the high school the victim attended and where Edwards worked as a trainer, testified that Edwards had voluntarily given him a handwritten statement detailing one of the offenses. Strelzin related that Edwards was crying and "extremely emotional" after giving him the statement. Strelzin was "incredulous" over the incident because he had never had a problem with Edwards before. According to Strelzin, Edwards had been "an outstanding trainer  . . .

[w]ell qualified, capable of handling his job."

Edwards also addressed the court during punishment. He apologized to the court, the victim, and the victim's family. Stating, "I don't know why I did that. I will never do it again," Edwards asked for the forgiveness of both the court and the victim's family.

After receiving a five year sentence, however, Edwards filed a motion for new trial contending that he was not competent at the time of his plea, that he pleaded guilty only because of inaccurate advice and improper pressure from his trial counsel, and that his trial counsel had otherwise rendered ineffective assistance. At the hearing on Edwards' motion, psychologist Dr. Karen Gold testified about her post-guilty plea evaluation of Edwards and her conclusions regarding Edwards' mental competence. Dr. Gold concluded that Edwards suffered from a variety of psychological disorders, most importantly a "Cluster C personality disorder." According to Dr. Gold, Edwards' personality disorder caused him to take responsibility for things that have gone wrong when confronted, even if he had nothing to do with the problem. Moreover, Dr. Gold opined that Edwards is incapable of thinking independently, has difficulty handling himself with authority figures, and will avoid any kind of hostility. Edwards' disorder was so severe, according to Dr. Gold's evaluation, that Edwards would even jump off an overpass on to Interstate 10 "if you applied enough pressure and insisted that he do it . . . ." In Dr. Gold's estimation, Edwards would "instantly capitulate" to an attorney's advice to plead guilty if the attorney pressured him. Edwards' father and girlfriend also testified at the hearing and both agreed that Edwards had difficulty standing up for himself and would often acquiesce to avoid confrontation. Edwards' father further testified that when he visited with Edwards approximately a week before Edwards' guilty plea, Edwards was "strung out" and so nervous and scared that he was unable to hold a conversation.

Edwards testified that despite his repeated protestations of innocence, his trial counsel had insisted that he plead guilty. Edwards' trial counsel allegedly assured him that the judge and the district attorney had agreed to set his punishment at five years deferred adjudication probation in return for his guilty plea. Additionally, Edwards and his girlfriend testified that trial counsel refused to take Edwards' calls and even threatened Edwards with jail time if Edwards persisted in calling. Finally, Edwards claimed that he made the written statement to Strelzin under duress from an assistant principal who told him exactly what to write.

The trial court denied Edwards' request for a new trial and Edwards appeals from that decision and from his original guilty plea with ten issues.

### INVOLUNTARY PLEA

In his first six issues, Edwards contends that his guilty plea was involuntary, and that the trial court erred in failing to grant him a new trial based on the involuntariness of his plea. He makes three arguments in support of these contentions: (1) he was incompetent at the time of his plea; (2) he was threatened by his trial counsel to plead guilty; and (3) he was induced to plead guilty by improper promises from his trial counsel. We will analyze Edwards' first six issues in terms of the three arguments he makes in support of them.

*1. Competence*

█ A defendant may challenge his competency to stand trial in a motion for new trial.[1] When raising the competency issue in this manner, a defendant may present evidence regarding his competency developed after conviction as Edwards

---

1. *See Brown v. State,* 960 S.W.2d 772, 778 (Tex.App.—Dallas 1997, pet. ref'd).

has done in this case.[2] Because the motion for new trial hearing occurs after sentencing and not "during trial,"[3] the trial court applies the traditional standard used to determine whether to grant a motion for new trial. In other words, the trial court considers all the evidence presented, judges the credibility of the witnesses, and resolves conflicts in the evidence.[4]

▇ In evaluating Edwards' claim that the trial court erroneously denied his motion for new trial, we consider all of the competency evidence presented at the motion for new trial hearing and reverse the trial court only if it abused its discretion.[5] We apply this standard because, at this stage of the proceeding, the trial court was determining whether Edwards' incompetency impugned the integrity of its judgment during trial.[6] The trial court, having observed Edwards both at trial and at the motion for new trial hearing, is in the best position to make this determination.[7]

Under the Texas Code of Criminal Procedure, a defendant is incompetent to stand trial if he does not have either: (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against him.[8] Edwards' evidence in this case did not establish either of these factors. Rather, it established that Edwards would not get into a confrontation and would back down under pressure. Specifically, Edwards' claim is that given his particular personality disorder, he was unable to overcome the pressure brought to bear by his attorney's insistence that he plead guilty. Thus, the evidence does not indicate that Edwards' disorder rendered him unable to consult with an attorney with a reasonable degree of understanding nor does it establish that Edwards did not have the ability to understand the proceedings against him.

▇ Even if Edwards' evidence did tend to establish legal incompetence, the trial court was entitled to balance that evidence against the record from Edwards' guilty plea, including the trial court's own observations of Edwards at the time of the plea.[9] Evidence tending to negate Edwards' theory was presented at the punishment stage. The trial court had before it Strelzin's testimony that Edwards had admitted the offense at a time prior to Edwards' contact with the allegedly overbearing attorney. Additionally, the record from the guilty plea and the punishment hearing in this case shows that Edwards coherently answered questions presented by the trial court. He gave a lucid apology to the court and to the victim's family. This evidence tends to establish that Edwards understood the proceedings and the nature of the allegations against him. Both the trial court and Edwards' attorney specifically stated that they found Edwards to be competent. Given the evidence available from both the motion for new trial hearing and the original guilty plea, we find that the trial court was within its discretion to deny Edwards a new trial based upon incompetence.

### 2. Threats and Promises

▇ Edwards' next two arguments center on alleged threats and promises made by his trial counsel to induce his

**2.** *Id.*

**3.** Tex.Code Crim. Proc. Ann. art. 46.02, § 2(b) (Vernon 1979).

**4.** *Brown*, 960 S.W.2d at 778; *Hafford v. State*, 864 S.W.2d 216, 217 (Tex.App.—Beaumont 1993, no pet.).

**5.** *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim. App.1995).

**6.** *Brown*, 960 S.W.2d at 778.

**7.** *Id.*

**8.** Tex.Code Crim. Proc. Ann. art. 46.02, § 1(a) (Vernon 1979).

**9.** *See Brown*, 960 S.W.2d at 778 (trial court, having observed defendant both at trial and at motion for new trial hearing, is in best position to determine competence).

guilty plea. Specifically, Edwards contends that his trial counsel assured him that the judge and the district attorney had agreed to allow him to serve a deferred adjudication probation in return for his guilty plea. Moreover, Edwards claims that his trial counsel told him to plead guilty "or else." The law regarding guilty pleas is firmly established. A guilty plea must be freely, voluntarily, and knowingly made on the part of the defendant.[10] This requirement assures that each defendant who pleads guilty to a criminal offense does so with a full understanding of the charges and the consequences of his plea.[11]

When the record shows that the trial court properly admonished the defendant, as it does here, however, it presents a prima facie showing that the guilty plea was knowing and voluntary, and the burden then shifts to the defendant to establish that he or she did not understand the consequences of the plea.[12] Although Edwards testified that he pleaded guilty because his counsel threatened him and promised him deferred adjudication probation, the record reflects that the trial court admonished Edwards that there was no punishment recommendation from the State. The trial court cautioned Edwards that, without any recommendation, Edwards' punishment could be anywhere within the range of punishment "all the way up to 20 years confinement in the State Penitentiary." Moreover, the trial court reminded Edwards of a plea offer Edwards had rejected and specifically told Edwards that his sentence could be harsher than the rejected plea offer. During his plea, Edwards acknowledged that no one had promised him anything to cause him to enter his plea, nor had anyone forced him to plead guilty. Finally, Edwards affirma-

tively stated that he was satisfied with his counsel's representation.

This court was presented with a similar situation in *White v. State*.[13] The appellant in *White*, like Edwards, testified at his plea hearing that he had not been promised anything in return for his plea. Also like Edwards, the appellant in *White* later testified that he was promised something in exchange for his guilty plea. We found, however, that the appellant in *White* failed to prove his counsel's erroneous promises prejudiced his defense for three reasons. First, the appellant stated at the time of his plea that he was not entering his plea on the basis of a promise. Second, the appellant was properly admonished by the trial court. Third, the appellant signed a statement at the time of his plea indicating he was satisfied with his defense counsel's representation.[14] In this case, Edwards affirmed at the time of his plea that he was not entering his plea based on any promises or threats. Similarly to the appellant in *White*, Edwards was properly admonished in this case, and he stated to the trial court that he was satisfied with his counsel's representation. We therefore find the circumstances in this case almost identical to the circumstances in *White*, and we find that Edwards has similarly failed to demonstrate involuntariness in his plea.

*3. Conclusion: Involuntariness*

Having found that the trial court did not err in denying Edwards a new trial based on incompetence or based on involuntariness of his plea, we overrule Edwards' first six issues for review.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his seventh through tenth issues, Edwards contends that he did not receive

---

10. *Ex parte Evans,* 690 S.W.2d 274, 276 (Tex. Crim.App.1985); *White v. State,* 892 S.W.2d 223, 226 (Tex.App.—El Paso 1995, no pet.).

11. *Basham v. State,* 608 S.W.2d 677, 678 (Tex.Crim.App.1980); *White,* 892 S.W.2d at 226.

12. *Hernandez v. State,* 885 S.W.2d 597, 601 (Tex.App.—El Paso 1994, no pet.); *Smith v. State,* 857 S.W.2d 71, 73 (Tex.App.—Dallas 1993, pet. ref'd).

13. 892 S.W.2d 223 (Tex.App.—El Paso 1995, no pet.).

14. *Id.* at 227.

effective assistance of counsel, and that the trial court erred in failing to grant him a new trial based on ineffective assistance. In issues seven and eight, Edwards challenges his trial counsel's performance prior to and during his guilty plea. In issues nine and ten, Edwards challenges his trial counsel's performance at punishment stage.

### 1. Counsel's Performance: Guilty Plea

The United States Supreme Court established a two-prong test for analyzing an ineffective assistance of counsel claim in *Strickland v. Washington.*[15] The *Strickland* test also provides the standard of review when there is a challenge to a guilty plea based on ineffective assistance of counsel.[16] Under the first prong, appellant must demonstrate that his counsel's performance fell below an objective standard of reasonableness.[17] Once appellant meets this burden, he must next show that there is a reasonable probability that, but for counsel's errors, he would not have entered his pleas and would have insisted on going to trial.[18] In this case, Edwards relies on his counsel's failure to properly advise him regarding his guilty plea and his counsel's failure to discover and raise the competence issue to establish that counsel's performance fell below an objective standard of reasonableness.

We do not find that the record necessarily establishes trial counsel's failure to properly advise Edwards regarding his plea. Although Edwards testified at the hearing on his motion for new trial that his trial counsel incorrectly promised him deferred adjudication probation and improperly threatened him with jail time unless he pleaded guilty, these allegations are contradicted by Edwards' own responses to the trial court's questioning at the time of his guilty plea. Edwards confirmed his understanding that the trial court could sentence him to any punishment within the punishment range. Moreover, Edwards acknowledged that his guilty plea was not the result of any promise or threat. Accordingly, the record is conflicting at best. Allegations of ineffective assistance will be sustained only if they are firmly founded in the record.[19] We are hard pressed to find Edwards' allegations "firmly founded" in this record. We therefore overrule those portions of Edwards' seventh and eighth issues asserting ineffective assistance for failure to properly advise Edwards on his guilty plea and complaining of the trial court's failure to order a new trial based on those assertions.

Edwards also charges that his trial counsel was ineffective for failure to raise Edwards' incompetence. He maintains that had counsel only spent more time with him and conducted a more thorough investigation into his background, his personality disorder would have become apparent. Edwards contends that trial counsel could have raised Edwards' incompetence as a defense if counsel had discovered it. As we have already determined, however, the personality disorder Edwards claims to have, while unfortunate, does not render him legally incompetent to understand the proceedings or to consult with his attorney with a reasonable degree of rational understanding.

---

**15.** 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**16.** *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210 (1985); *Ex parte Adams,* 707 S.W.2d 646, 649 (Tex.Crim. App.1986); *Larson v. State,* 759 S.W.2d 457, 460 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd), *cert. denied,* 490 U.S. 1008, 109 S.Ct. 1646, 104 L.Ed.2d 161, *pet. reh'g denied,* 490 U.S. 1085, 109 S.Ct. 2112, 104 L.Ed.2d 672 (1989).

**17.** *Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2065, 80 L.Ed.2d at 693.

**18.** *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 697; *White,* 892 S.W.2d at 228.

**19.** *Welch v. State,* 908 S.W.2d 258, 261 (Tex. App.—El Paso 1995, no pet.).

In any event, the record does not firmly establish that trial counsel performed deficiently by failing to discover Edwards' disorder. The record reveals that trial counsel had contacted at least thirty of Edwards' friends, colleagues, and former co-workers prior to the guilty plea. In addition, trial counsel represented that he talked to Edwards' father for four hours.[20] Edwards did not present any evidence that any of these people either informed trial counsel of Edwards' personality disorder, or could have so informed counsel if questioned sufficiently. Moreover, Edwards did not present any evidence of any person trial counsel might have contacted, but failed to contact, who could have shed light on Edwards' disorder. There is also no evidence that Edwards himself ever attempted to apprise his trial counsel of his disorder.

We note also that the trial court had an opportunity to observe Edwards during the guilty plea, punishment evidence, and during Edwards' articulate statement during punishment in which he apologized to the court and to the victim's family. The trial court was able to observe Edwards further during his testimony at the new trial hearing. At this hearing, the trial court could have observed Edwards when he stood up for himself by disagreeing with the prosecutor when she cross-examined him. These in-court observations of Edwards under pressure gave the trial court an opportunity to gauge the degree to which Edwards' personality disorder manifested itself and the ease (or difficulty) with which trial counsel may have discovered it.

Accordingly, we find that the record as a whole supports a conclusion that trial counsel conducted a reasonable investigation into Edwards' background. It further supports the conclusion that counsel's failure to discover a specific personality disorder despite an otherwise thorough investigation did not, in itself, render the investigation unreasonable. We therefore find that the trial court did not abuse its discretion in refusing Edwards a new trial based on ineffective assistance during the guilty plea and we overrule the remainder of Edwards' seventh and eighth issues for review.

### 2. Counsel's Performance: Punishment

In his ninth and tenth issues, Edwards contends that trial counsel was ineffective at the punishment stage for failure to present live witnesses and again for failure to present evidence of his personality disorder. The standard of review applied to determine if an accused was denied effective assistance of counsel in the punishment phase of a non-capital trial is whether the accused received reasonably effective assistance based upon the totality of the representation.[21] In applying the standard, we are required to review the full scope of counsel's assistance—including representation, performance, and delivery—to determine the quality of the assistance *actually rendered.*[22] Appellant's right to reasonably effective counsel does not entitle him to errorless counsel whose effectiveness is judged through hindsight.[23] Furthermore, reasonably effective assistance can include strategies fostered by trial counsel which, without the distorting effects of hindsight, might not have been advanced by appellate counsel.[24] Even

**20.** This representation was disputed at the motion for new trial hearing. Trial counsel's contact with thirty of Edwards' acquaintances, however, was undisputed.

**21.** *Ex parte Walker,* 794 S.W.2d 36, 37 (Tex. Crim.App.1990); *Ex parte Duffy,* 607 S.W.2d 507, 516 (Tex.Crim.App.1980); *Jaile v. State,* 836 S.W.2d 680, 683, 686–87 (Tex.App.—El Paso 1992, no pet.).

**22.** *Walker,* 794 S.W.2d at 37.

**23.** *See Stafford v. State,* 813 S.W.2d 503, 506 (Tex.Crim.App.1991); *Ex parte Cruz,* 739 S.W.2d 53, 58 (Tex.Crim.App.1987); *Jaile,* 836 S.W.2d at 687.

**24.** *See Stafford,* 813 S.W.2d at 506.

though the appellant need not meet the more stringent two-pronged *Strickland* standard applied in other situations, the appellant does shoulder the burden of establishing that the totality of the assistance actually rendered was not reasonably effective.

Edwards first asserts that trial counsel failed to render reasonably effective assistance because he failed to call one of the approximately thirty persons he contacted during his investigation and instead attempted to introduce letters from each of them. The State objected to the letters as hearsay and the trial court excluded them from evidence. Edwards maintains that this incident constitutes ineffective assistance for two reasons. First, trial counsel failed to call known defense witnesses to testify. Second, trial counsel demonstrated a lack of basic knowledge of the law by attempting to introduce hearsay evidence. Viewing the full scope of counsel's assistance, however, we do not find that these alleged deficiencies brought counsel's performance below the level of reasonable effectiveness.

Edwards contends that the defense witnesses counsel failed to call would have testified to his good character in mitigation of punishment. It is undisputed that the witnesses were not called, but the record reflects that counsel deduced evidence of Edwards' good character from a State witness. Paul Strelzin, who was called by the State, testified in response to trial counsel's questioning that he had "tremendous admiration for [Edwards]," and that Edwards "had the concern of the welfare of the students, of the school, of the staff, of the community" in mind as he went about his training duties. Trial counsel elicited from Strelzin that Strelzin had been "totally in shock" over the allegations against Edwards because Edwards had been a "man that I [Strelzin] rely upon." Finally, trial counsel extracted from Strelzin that he "had a great deal of admiration for him [Edwards] then, still do." Thus the record reflects that trial counsel effectively pre-

sented testimony of Edwards' good reputation and character in mitigation of punishment. Furthermore, there is no indication that any of the thirty witnesses Edwards claims should have been called on his behalf would have been any more helpful to mitigation of Edwards' punishment than Strelzin. Accordingly, we find that Edwards has failed to demonstrate that the quality of the totality of the assistance actually rendered to him at punishment fell below the standard of reasonable effectiveness. We therefore overrule those parts of Edwards' ninth and tenth issues complaining of ineffective assistance for failure to present additional character witnesses, and of the trial court's failure to order a new trial on that ground.

Finally, Edwards contends that his trial counsel was ineffective because he failed to discover and present evidence of Edwards' personality disorder in mitigation of punishment. For the same reasons we found trial counsel reasonably effective despite his failure to discover and present evidence of incompetence at the guilty plea stage, we also find counsel rendered reasonably effective assistance despite the failure to discover and present evidence of personality disorders in mitigation of punishment. Accordingly, we overrule the remainder of Edwards' ninth and tenth issues.

## CONCLUSION

Having considered and overruled each of Edwards' ten issues on appeal, we affirm the judgment of the trial court.