11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Allan
Wayne Brubaker

Appellant

Vs.                   No. 11-04-00121-CR -- Appeal from Taylor County

State
of Texas

Appellee

 

Allan Wayne Brubaker appeals his conviction upon
his plea of guilty to the offense of murder. 
Pursuant to a plea bargain, Brubaker was sentenced to 30 years in the
Texas Department of Criminal Justice, Institutional Division.  He contends in two issues that the trial court
erred in accepting his guilty plea where there was a prior unvacated adjudication
of incompetency resulting in the establishment of a guardianship and that the
trial court abused its discretion in failing to grant his motion for new trial
based upon claims of insanity at the time of the alleged offense, incompetence
to stand trial, and claims of an involuntary plea because he was incompetent at
the time of his plea.  We affirm.  

Both of Brubaker=s
issues are based upon his contention that his plea of guilty was involuntary as
a matter of law because he was under a guardianship, he was unable at the time
of his plea to make a rational and informed decision as a reasonably prudent
person would, and he had an inadequate time to make the decision to enter his
plea.  We construe all of these to be
challenges that the plea was involuntary because Brubaker was incompetent to
stand trial.

A defendant may challenge his competency to stand
trial in a motion for new trial.  Edwards
v. State, 993 S.W.2d 171, 175 (Tex.App. - El Paso 1999, pet=n ref=d).  Because a new trial hearing occurs after
sentencing and not during trial, the trial court applies the traditional
standard used to determine whether to grant a motion for new trial.  Id. at 176.  The court considers all the evidence
presented, judges the credibility of the witnesses, and resolves conflicts in
the evidence.  Id.  In evaluating this issue on appeal, we
consider all of the competency evidence presented at the motion for new trial
hearing and reverse the trial court only if it abused its discretion.  Id.








A defendant is incompetent to stand trial if he or
she does not have either (1) sufficient present ability to consult with his or
her lawyer with a reasonable degree of rational understanding or (2) a rational
as well as factual understanding of the proceedings against him or her.  TEX. CODE CRIM. PRO. ANN. art. 46B.003(a)
(Vernon Pamph. Supp. 2004 - 2005), formerly TEX. CODE CRIM. PRO. art. 46.02, ' 1(a) (1979). 

Brubaker testified at the hearing on his motion
for new trial that, at the time of his plea, he was represented by attorney Jim
Smart with whom he had discussed the case. 
He indicated that the State=s
plea offer changed from 60 years to 30 years on the day of trial.  He stated that everything happened so fast
that he did not get a chance to really process the understanding of what he was
doing.  He concluded that he did not
enter into his plea freely, voluntarily, and knowingly.  He asserted that he did not understand what
he was pleading to.  He acknowledged that
his attorney had tried to explain it to him.

Brubaker testified that he suffered a severe head
injury in 1997 when a tree fell on him while he was working as a
lumberjack.  He related that doctors did
a craniotomy on his right posterior temple. 
He said that they took out the part of his brain that was injured and
that the portion removed was part of his short-term memory, executive
functioning, and his cognitive Astuff.@ 
He stated that he had to be retrained to learn how to think again.  He related that he had been under a doctor=s care ever since the injury in
1997.  Brubaker testified that, since his
injury, he had spent time on more than one occasion in River Crest Hospital.  He said that he had also spent time at
Tangram Premier Rehabilitation Center being treated for his brain injury.  He also stated that he had spent time at
Hermann Hospital, Rusk State Hospital, and a brain injury rehab center at
Conroe.  Brubaker testified that in April
2003 he was interviewed by Dr. Crowley for 30 minutes.

Brubaker acknowledged that he had read his motion
for new trial and that he understood what it was when he read it.  He stated that his attorney at trial showed
him Dr. Crowley=s
evaluation and that they talked about it. 
He acknowledged that he and the attorney talked about why he committed
the offense and about what he was thinking prior to it happening.








Brubaker testified that the judge at his plea
hearing went over everything that he signed and that he did not have a problem
understanding what he had said until he went back to his cell.  He insisted that it took him time to process
certain things.  He acknowledged that he
had signed the documents of his own free will. 
He further acknowledged that it was his idea, after his attorney had
passed on to him a plea bargain for 40 years, to either go to a jury trial or
take 30 years.  He stated that it was
possible to talk about things that he did not understand.

James H. Smart, Jr., Brubaker=s attorney at the time of his plea,
testified concerning the negotiations that resulted in the plea.  He related that, on the day of the trial, the
district attorney for the first time reduced his plea offer from 60 to 40
years.  He said that he was sure that,
when he presented the offer of 40 years to Brubaker, he refused that amount and
said that he would take 30. He acknowledged that probably about 30 minutes
elapsed from the time he got back from his discussion that morning with the
district attorney until the plea papers were signed.

Smart said that, because of Brubaker=s record of mental problems, he
requested that Brubaker be examined for issues of competency and/or
sanity.  He stated that he discussed the
offense, defenses, and other matters relating to trial preparation.  He insisted that he believed that, on the
date of trial, Brubaker understood what was happening as far as the trial; that
he understood the nature of a plea offer; and that he understood the effect of
what he was doing when he presented the number of years that he would
take.  He also testified that, in his
opinion, Brubaker understood the nature of the plea papers he was signing.  He said that he was looking for indications
that Brubaker might not be competent on that day to stand trial but that
Brubaker did not give him any such indications. 
He concluded that he thought that Brubaker entered his plea voluntarily
and knowingly.

In his report to the trial court, Dr. John D.
Crowley indicated, among other things, that Brubaker had been functioning in
the borderline intellectual functioning range since the time of his 1997 brain
injury and that these deficits had been complicated by intermittent
difficulties with significant substance abuse. 
He related that, despite such difficulties, Brubaker had a reasonably
good understanding of the criminal court process and seemed to have
intellectual command of the pertinent details relating to his case.  Dr. Crowley concluded that he believed
Brubaker would be able to effectively work with his defense attorney in
presenting his case before a court.  He
said, with respect to the issue of Brubaker=s
sanity at the time of the offense, that he recognized what he had done was
wrong because he attempted to cover up the crime scene.  Dr. Crowley concluded that, by the Texas
legal definition of insanity, Brubaker was sane at the time of the offense.








The record also includes a March 13, 2002, report
from Samuel D. Brinkman, Ph.D., a clinical neuropsychologist.  In the report, Dr. Brinkman stated that he
told Brubaker that he felt Brubaker was able to manage his own affairs but that
it would require a great deal of self-discipline and emotional control on his
part.  Dr. Brinkman indicated that he had
discussed with Brubaker the bad decisions that Brubaker had made and that
Brubaker promised to try a policy of not making any decisions without first
investigating the situation and waiting 24 hours.  In a report dated February 17, 2001, Dr.
Brinkman refered to Brubaker as having recently attempted suicide and having
difficulty learning to adjust to his decline in overall intellectual
functioning, management of daily living, management of memory deficits,
executive functioning, emotionality, and anger intensity.  He also stated in the report that Brubaker
had difficulty organizing his thoughts and had a poor ability to maintain
concentration and attention.

In a speech-language pathology initial evaluation
summary from Tangram Premier, the evaluating professional indicated that
Brubaker exhibited high level cognitive deficit in executive functions,
specifically sustained and divided attention. 
Guardianship proceedings in the County Court at Law of Taylor County
reflect that the court appointed an individual and then later an agency as
guardians of Brubaker=s
estate.  In subsequent pleadings filed in
April 2002, seeking to restore Brubaker=s
capacity, Brubaker=s
attorney stated that he believed Brubaker had the capacity to retain him
because Brubaker had retained his services for a worker=s
compensation claim as well as for the motion for restoration.  The proceedings in connection with the
restoration do not reflect that an ad litem was appointed in the proceeding or
that a licensed physician=s
report was filed.

Additionally, at the plea hearing before the same
judge who heard the motion for new trial and after consulting with his
attorney, Brubaker stated that he was pleading guilty.  He indicated that he understood the written
plea admonishment, the range of punishment, and the plea agreement. Brubaker
asserted that he was entering his plea of guilty freely and voluntarily.

Having considered all of the evidence presented in
connection with Brubaker=s
motion for new trial, we conclude that there was ample evidence from which the
trial court could reasonably conclude that Brubaker was competent to stand
trial, that Brubaker=s
guilty plea was knowingly and voluntarily entered, and that he was legally sane
at the time of the alleged offense.  The
record does not show that Brubaker was incompetent to stand trial as a matter
of law.  Consequently, no error is shown
by the trial court=s
acceptance of Brubaker=s
plea of guilty or the trial court=s
failure to grant Brubaker=s
motion for new trial.  








Brubaker suggests that the trial court=s acceptance of his guilty plea
constituted an abuse of discretion by the trial court under the standard
announced in Garcia v. State, 595 S.W.2d 538 (Tex.Cr.App.1980).  We find Garcia to be
distinguishable.  In Garcia, the
court granted the defendant=s
motion for an examination by a psychiatrist. 
Id. at 540.  Both the
defendant=s mother
and wife testified that they had trouble communicating with him.  Id. 
His mother testified that he had previously been hospitalized for a
nervous breakdown and that his present behavior evidenced a recurrence.  Id. 
His wife also indicated that his present behavior was the same as
his behavior at the time of the nervous breakdown.  Id. 
One of his defense attorneys testified that he was Aalmost to the point of being catatonic.@ 
Id.  The attorney stated
that he was unable to discuss the facts and the seriousness of the case with
his client.  Id.  He also indicated that he thought his
client was losing touch with reality because he thought he could open the
jailhouse doors by tying knots in a string. 
Id.  A minister with
extensive training in the mental health field who had visited Garcia in jail
recounted a conversation with Garcia about how tying some strings together
would keep him safe and how, if he touched a certain knot, it would open
jailhouse doors.  Id. at
540-41.  The minister concluded that
Garcia was out of touch with reality and incompetent to act in a rational
way.  Id. at   541.    

In rebuttal, the State had presented a jailer who
testified that he had never observed any unusual behavior on Garcia=s part but who acknowledged that he had
never had a conversation with him.  Id.
 The record reflects that the trial
court=s
decision not to impanel a jury was based on the report of the psychiatrist who
examined Garcia and that the psychiatrist concluded that Garcia was competent
to stand trial.  Id.  However, the report, including its
conclusion, was neither admitted nor included in the record.  Id. 
The Garcia court, considering all of the evidence except for
the psychiatrist=s
conclusion, held that the trial court abused its discretion in refusing to
impanel a jury on the issue of competency. 
Id. at 542.  In Garcia,
the court noted that the only admitted evidence of any significant probative
value was to the effect that Garcia was incompetent. Id.  In the case at bar, there was abundant
evidence, including the examining psychiatrist=s
report which is contained in this record, that would reasonably support a
conclusion that Brubaker was competent at the time of trial.








Brubaker insists that the trial court should have
granted his motion for new trial because the facts showing that he was under a
guardianship, he was unable to make a rational and informed decision as a
reasonably prudent person, and his neuropsychologist had advised that he think
about important decisions 24 hours before making them rendered his guilty plea
involuntary as a matter of law.  He also
noted that no mental health witness indicated that he was competent at the time
of his plea.  As to Brubaker=s assertion that he was unable to make
a rational and informed decision as a reasonably prudent person, the evidence
was at best conflicting as to that issue. 
With respect to the guardianship and the advice that he think about
important decisions for 24 hours, we note that there was abundant evidence
that, despite either of those considerations, Brubaker was competent to stand
trial.  Also, as noted by Brubaker, a
probate court=s order
determining one=s
competency to manage one=s
own affairs is not evidence of incompetency to stand trial.  Koehler v. State, 830 S.W.2d 665,
666-67 (Tex.App. - San Antonio 1992, no pet=n).  We overrule issues one and two.

The judgment is affirmed.

 

PER CURIAM

 

August 11, 2005

Do not publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of:  Wright, J.,
and

McCall, J., and Hill, J.[1]











[1]John G. Hill, Former Chief Justice, Court of Appeals,
2nd District of Texas at Fort Worth sitting by assignment.