IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. AP-76,873 & AP-76,874






EX PARTE MICHAEL GEORGE LAHOOD, Applicant









ON APPLICATIONS FOR A WRIT OF HABEAS CORPUS

CAUSE NOS. 960494-A & 960495-A IN THE 185TH DISTRICT COURT

FROM HARRIS COUNTY



 

 Hervey, J., delivered the opinion of the Court in which Price, Womack,
Johnson, Keasler, Cochran, and Alcala, JJ., joined. Keller, P.J., filed a
concurring opinion in which Meyers, J., joined. Meyers, J., concurred in the
result. 


O P I N I O N



 Applicant, Michael LaHood, was convicted of aggravated kidnapping and
aggravated sexual assault. On direct appeal, the Fourteenth District Court of Appeals
affirmed his convictions in a published opinion. LaHood v. State, 171 S.W.3d 613 (Tex.
App.--Houston [14th Dist.] 2005, pets. ref'd). We subsequently refused his petitions for
discretionary review. Applicant now files these applications for a writ of habeas corpus
alleging, in part, that he received ineffective assistance of counsel because his trial
counsel failed to investigate his mental-health history, and if she had, there was a
reasonable probability that the outcome of his proceeding would have been different. The
trial court entered findings of fact and conclusions of law recommending that we deny
relief. We will deny relief.

I. PROCEDURAL HISTORY

 Applicant committed aggravated kidnapping and aggravated sexual assault on or
about September 3, 2003. He was found guilty of both charges by a jury. His punishment
was assessed at thirty years' imprisonment in each case to run concurrently. On direct
appeal, the Fourteenth District Court of Appeals affirmed the judgment of the trial court.
LaHood, 171 S.W.3d at 625.

 On May 7, 2007, Applicant filed the instant applications for a writ of habeas
corpus, in which he claimed that his trial counsel was ineffective. (1) The State filed its
answer and argued that, to resolve Applicant's claims, more information was needed from
Applicant's trial counsel regarding her "pre-trial investigative efforts, strategic decisions,
and confidential communications with Applicant." The habeas court agreed and entered
an order designating the issues and directing Applicant's trial counsel, Leah Borg, to file
the proposed affidavit. Ms. Borg filed her first affidavit on October 17, 2007. (2) Applicant
then filed an affidavit by J. Ray Hays, Ph.D., J.D., a mental-health expert, to support
Applicant's claim that his counsel should have been aware that he was incompetent to
stand trial. In addition, Applicant's father, Colonel (Ret.) George A. LaHood, filed an
affidavit disputing certain statements made by trial counsel in her initial affidavit. A few
weeks later, Applicant filed an affidavit from mental-health expert Victor R. Scarano,
M.D., J.D., which addressed trial counsel's affidavit and Applicant's competency. Trial
counsel then filed her second amended affidavit (her third affidavit chronologically) to
respond to claims raised by Applicant in his amended application. Finally, Applicant filed
additional supporting affidavits from another criminal-defense attorney, the custodian of
records for the Harris County District Clerk's Office, Applicant's former wife, Elizabeth
Patterson, and the custodian of records for the Harris County Sheriff's Office.

 On April 19, 2009, the habeas court recommended denying Applicant's claims for
relief. However, we remanded the applications for additional fact-finding and to
supplement the record. See Ex parte LaHood, Nos. WR-72,580 & WR-72,580-02, 2011
WL 2369392, at *1 (Tex. Crim. App. June 8, 2011) (per curiam) (not designated for
publication). Specifically, we remanded for further fact-finding regarding whether
Applicant was able to make an informed, knowing, and intelligent decision to testify and
to supplement the record "with the notes trial counsel references in her affidavits that she
states Applicant made during trial." (3) Id. If those notes could not be provided, the trial
court was directed to make factual findings regarding the reasons why. Id. On remand,
trial counsel filed a fourth affidavit responding to this Court's remand order, the State
filed a brief, State's Supplemental Answer After Remand, (4) and Applicant filed a brief
objecting to the State's supplemental answer and a second affidavit, in which Dr. Scarano
reviewed documentation made available to him after submission of his original affidavit.
On November 17, 2011, after considering the additional information, the habeas court
again recommended denying relief.

 Based on the additional findings of fact and conclusions of law made by the trial
court, we filed and set the applications and ordered the parties to brief the following three
issues:

 1. Whether trial counsel, under Strickland v. Washington, 466
U.S. 668 (1984), was deficient for not bringing to the trial
court's attention, either before or during trial, evidence of
Applicant's alleged incompetency to stand trial.

2. Assuming trial counsel was deficient for failing to alert the
trial court to the alleged incompetency, whether Applicant
was harmed by counsel's actions under Strickland v.
Washington, 466 U.S. 668 (1984), and how the determination
of harm should be made considering this Court's holdings in
Sisco v. State, 599 S.W.2d 607 (Tex. Crim. App. 1980),
Barber v. State, 737 S.W.2d 824 (Tex. Crim. App. 1987),
Williams v. State, 663 S.W.2d 832 (Tex. Crim. App. 1984),
and their progeny.

3. Assuming deficient performance and resulting harm are
shown under Strickland v. Washington, 466 U.S. 668 (1984),
whether the proper remedy is to order a retrospective
competency inquiry or to grant a new trial. See, e.g., Barber v.
State, 737 S.W.2d 824 (Tex. Crim. App. 1987); Caballero v.
State, 587 S.W.2d 741 (Tex. Crim. App. 1979).


Ex parte LaHood, Nos. AP-76,873 & AP-76,874, 2012 WL 3996712 (Tex. Crim. App.
Sept. 12, 2012) (per curiam) (not designated for publication). 

II. INEFFECTIVE ASSISTANCE OF COUNSEL

 A defendant has a Sixth Amendment right to effective assistance of counsel. U.S.
Const. amend. VI; see Strickland v. Washington, 466 U.S. 668 (1984). Ineffective-assistance-of-counsel claims are cognizable on habeas review, and to determine whether
to grant habeas relief for ineffective assistance of counsel, Texas courts apply the
standard set forth in Strickland. See Ex parte Martinez, 330 S.W.3d 891, 900 (Tex. Crim.
App. 2011); Hernandez v. State, 726 S.W.2d 53, 55-56 (Tex. Crim. App. 1986). The
Strickland standard requires that an applicant establish two components by a
preponderance of the evidence: (1) deficient performance of trial counsel and (2) harm
resulting from that deficiency sufficient to undermine confidence in the outcome of the
trial. Strickland, 466 U.S. at 687. The proper standard of review for claims of ineffective
assistance of counsel is whether, considering the totality of the representation, counsel's
performance was ineffective. See Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999) (citing Ex parte Felton, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991)).

 An attorney's performance is deficient when it falls "below an objective standard
of reasonableness" under prevailing professional norms and according to the necessity of
the case. Ex Parte Moore, 395 S.W.3d 152, 156-57 (Tex. Crim. App. 2013). We refer to
standards published by the American Bar Association and other similar sources as guides
to determine prevailing professional norms. Strickland, 466 U.S. at 688-89 (citing ABA
Standards for Criminal Justice (2d ed. 1980)). However, publications of that sort are
only guides because no set of detailed rules can completely dictate how best to represent a
criminal defendant. See id. at 688-89. We begin the analysis of counsel's performance
with a strong presumption that her actions fell within the wide range of reasonable
professional assistance. Id. at 689; see Frangias v. State, 392 S.W.3d 642, 653 (Tex.
Crim. App. 2013).

 One necessary facet of professional assistance is the investigation of the facts and
law applicable to a case. Counsel has a duty in every case to make a reasonable
investigation or a reasonable decision that an investigation is unnecessary. Strickland, 466
U.S. at 691; see Ex parte Imoudu, 284 S.W.3d 866, 870 (Tex. Crim. App. 2009). "When
assessing the reasonableness of an attorney's investigation, a reviewing court must
consider the quantum of evidence already known to counsel and whether the known
evidence would lead a reasonable attorney to investigate further." Ex parte Martinez, 195
S.W.3d 713, 721 (Tex. Crim. App. 2006).

 An attorney's deficient performance prejudices an accused when there is a
reasonable probability that the outcome of the trial would have been different but for
counsel's deficiency. Cox v. State, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012). We
have defined a reasonable probability as "a probability sufficient to undermine confidence
in the outcome." Id. (quoting Strickland, 466 U.S. at 694).

 A. Trial counsel was deficient when she made an unreasonable decision not to
investigate Applicant's mental-health history.

 Applicant argues that his trial counsel observed evidence of his lack of mental
health before trial, at his trial, and during the sentencing phase. He contends that his trial
counsel's failure to follow up on the various indicia of his alleged incompetency fell
below prevailing professional standards and, as a result, her performance was
constitutionally deficient. We agree.

 Relevant American Bar Association standards state that "[d]efense counsel should
consider all procedural steps which in good faith may be taken, including, obtaining
psychiatric examination of the accused when a need appears . . . ." ABA Standards for
Criminal Justice: Prosecution and Defense Function 4-3.6 (3d ed. 1993). This
standard, though not binding, appears to comport with the applicable standard at the time
of Applicant's trial--whether defense counsel had or should have had a bona fide doubt
as to Applicant's competency. Standard 4-4.1, titled "Duty to Investigate," states in part,
that "[d]efense counsel should conduct a prompt investigation" and explore all avenues
leading to relevant facts of the case. Id. at 4-4.1.

 In trial counsel's affidavits, she described her client as having a "misogynistic
attitude with a need to dominate and exercise control over women . . . ." She also stated
that Applicant is a malingerer and "engaged in . . . antics designed to create the illusion of
incompetency, but which appeared to be nothing more than an act." To support her
assertions, she cites to pages of cogent notes written by Applicant during trial, but she can
no longer locate the notes in question. She does acknowledge, however, that Applicant
told her he was bipolar and was prescribed Zoloft, Risperadol, and Zyprexa. She also
stated that a mental-health pretrial screening sheet for Applicant related to a prior sexual-assault case indicated that he had an alcohol dependency problem, was bipolar, and was
prescribed Lithium, Prozac, and Lidicin. Although the record does not reveal when that
screening took place, it shows that Applicant has had previous mental-health issues.
Moreover, trial counsel admits that Applicant was on medications for his mental illness
and that, without his medication, he could become incompetent:

These medications are what I have observed in the past to be prescribed to
persons who have been found "incompetent, but who have a substantial
probability of regaining competency" through the use of medications. The
fact that Applicant was taking these medications I believed was further
support to my conclusion that Applicant was legally competent.

First Amended Affidavit Trial Counsel at 3.


 In addition, Applicant's father stated in his affidavit that trial counsel never called
him, and he didn't speak with her for the first time until he called her about a week before
trial. He explained that, during their conversation, he told her about his son's mental
illness and need for his medications. But trial counsel stated that she did not recall any
family members telling her that "Applicant had any mental-health history that would
make him legally incompetent, even though he may have mental health issues." In
addition to Applicant's father, Applicant's ex-wife, Elizabeth Patterson, stated that she
told trial counsel that she had important information concerning Applicant's mental-health history, including how his illness and drugs and alcohol have affected him. She
also asserts that trial counsel never called her to testify in the guilt phase, even though she
was present in the courtroom when Applicant was found guilty. In short, the record shows
that trial counsel thought Applicant had mental-health issues but was competent to stand
trial, and she came to this conclusion despite speaking with Applicant, his father, and
Applicant's former wife. See First Amended Affidavit of Trial Counsel at 3 ("My
observations of Applicant and interactions with him did not lead me to believe that he
was legally incompetent, therefore I did not believe that it was necessary to request a
competency evaluation.").

 At trial, new signs of Applicant's potential mental instability arose. During the
guilt phase of the trial, Applicant engaged in multiple outbursts and claimed that he was
not receiving his required psychoactive medications in jail. For example, on the second
day of his testimony, Applicant complained that he was having difficulty understanding
the proceeding and that he was seeing lights blink. After these statements, the trial court
recessed the proceeding for the day. It appears that counsel believed that she did not need
to suggest that her client was incompetent to stand trial because the court took breaks to
accommodate Applicant before ultimately recessing for the day. But the statutory duty of
a judge to suggest that a defendant may be incompetent to stand trial should not be
confused with counsel's obligation to make a reasonable decision to investigate and to
raise relevant issues to protect the client. This is especially so when counsel's belief as to
a medical issue is based on her own lay opinion, even though she knew Applicant had
mental-health issues in the past and was taking medications that gave him, in her
estimation, a "substantial probability of regaining competency." Applicant's medical
records from the jail were easily accessible and contained significant information
(including evidence of a suicide attempt during the trial) that could have allowed his
attorney to assert that he was incompetent. After reviewing the quantum of evidence
known to counsel before and during trial, and whether the known evidence would lead a
reasonable attorney to investigate further, we conclude that trial counsel's failure to
further investigate was unreasonable under the circumstances. See Ex parte Martinez, 195
S.W.3d at 721; see also Roberts v. Dretke, 381 F.3d 491, 498 (5th Cir. 2004) (stating that
trial counsel must investigate a client's mental-health history if he has a reason to believe
his client suffers from mental-health issues); Bouchillon v. Collins, 907 F.2d 589, 597
(5th Cir. 1990) ("It must be a very rare circumstance indeed where a decision not to
investigate would be 'reasonable' after counsel has notice of the client's history of mental
health problems."); Beavers v. Balkom, 636 F.2d 114, 116 (5th Cir. 1981) (holding that
defense counsel has an obligation to obtain medical records and to speak with his client's
doctors).

B. Applicant was not prejudiced because there was not a reasonable probability that the
fact-finder would have found Applicant incompetent to stand trial.


 Having decided the trial counsel's performance was deficient, we now turn to the
question of

whether Applicant was harmed by counsel's actions under Strickland v.
Washington, 466 U.S. 668 (1984), and how the determination of harm
should be made considering this Court's holdings in Sisco v. State, 599
S.W.2d 607 (Tex. Crim. App. 1980), Barber v. State, 737 S.W.2d 824 (Tex.
Crim. App. 1987), Williams v. State, 663 S.W.2d 832 (Tex. Crim. App.
1984), and their progeny.

 

The Supreme Court's prejudice standard in a Strickland analysis is flexible and must be
applied in many different contexts. For that reason, we review the relevant competency
laws and Strickland cases to resolve how Applicant can prove prejudice in this context
and, ultimately, whether he was prejudiced and entitled to relief. 

 At trial, the issue of incompetency must have first been raised by either a party to
the case or the trial court. See Tex. Code Crim. Proc. art. 46B.004(a), (b) (2004)
(allowing either party or the trial court to suggest that the defendant may be incompetent
to stand trial). But regardless of whether a party or the trial court was the one to make
such a suggestion, a trial court was not authorized to initiate an informal inquiry to
determine a defendant's competency unless the evidence of incompetency was "sufficient
to raise a bona fide doubt in the mind of the judge whether the defendant [was] legally
competent." Montoya v. State, 291 S.W.3d 420, 425 (Tex. Crim. App. 2009); see
Gonzales v. State, 313 S.W.3d 840, 841-42 (Tex. Crim. App. 2010). Assuming that the
court harbored a bona fide doubt, then it initiates an informal inquiry to determine if
"there is some evidence from any source that would support a finding that the defendant
may be incompetent to stand trial." Tex. Code Crim. Proc. art. 46B.004(c) (2004). We
have held that the court is "to assay just that evidence tending to show incompetency,
putting aside all competing indications of competency, to find whether there is some
evidence, a quantity more than none or a scintilla, that rationally may lead to a conclusion
of incompetency." (5) If the judge finds "some evidence" in the record that "rationally may
lead to a conclusion of incompetency[,]" then a trial within a trial should be held on the
issue of the defendant's competency. Tex. Code Crim. Proc. art. 46B.005(b) (2004);
Sisco, 599 S.W.2d at 614. Thus, the determination of competency is not decided unless
the court holds a trial to determine competency, which is authorized only if the court has a
bona fide doubt that the defendant is not competent and, after assaying the evidence, it
finds some evidence that the defendant is incompetent. See Morris v. State, 301 S.W.3d
281, 287 (Tex. Crim. App. 2009).

 Article 46B.003(a) states that a person is incompetent to stand trial if the person
does not have (1) "sufficient present ability to consult with the person's lawyer with a
reasonable degree of rational understanding" or (2) "a rational as well as factual
understanding of the proceedings against the person." Tex. Code Crim. Proc. art.
46B.003(a) (2004); see Strickland, 466 U.S. at 695 ("The governing legal standard plays a
critical role in defining the question to be asked in assessing the prejudice from counsel's
errors."). We have stated that the factors experts use in conducting a competency
evaluation are also helpful to the fact-finder in determining the broader question of
competency. See Morris, 301 S.W.3d at 286 n.10; see also Tex. Code Crim. Proc. art.
46B.024 (2004). These factors include whether a defendant can

(1) understand the charges against him and the potential consequences of
the pending criminal proceedings; (2) disclose to counsel pertinent facts,
events, and states of mind; (3) engage in a reasoned choice of legal
strategies and options; (4) understand the adversarial nature of criminal
proceedings; (5) exhibit appropriate courtroom behavior; and (6) testify.


Morris, 301 S.W.3d at 286 n.10. A person is presumed to be competent, and the burden is
on a criminal defendant to prove incompetency by a preponderance of the evidence. Tex.
Code Crim. Proc. art. 46B.003(b) (2004).

 The focus of the prejudice inquiry here is whether an applicant can show that there
was a reasonable probability that he would have been found incompetent to stand trial if
the issue of competency had been raised and fully considered. (6) See Strickland, 466 U.S. at
695. This is true because, under Texas law, even though there are conditions precedent
that must be met to obtain a trial on competency, the only way the outcome of the guilt
phase of the proceeding would be different is if the defendant proved that he was
incompetent to stand trial. Anything less than a finding of incompetence would not have
changed the outcome. (7) In assessing prejudice, we look to the entire record. Id.

 After reviewing the trial and writ records, we are of the opinion that Applicant was
not prejudiced by his trial counsel's deficient performance because he has not met his
burden of proof that, but for his trial counsel's deficient performance, there is a
reasonable probability that a fact-finder would have found him incompetent to stand trial.
Based on Dr. Scarano's testimony, Applicant argues that the lack of medication given at
the jail--as well as the increase in dosage at the time of trial--caused Applicant to
mentally decompensate. This decompensation, he stated, could include distorted
perceptions of reality, interference with the thinking process, poor reasoning, and
hallucinations. If true, Applicant argues, his insistence on testifying could not have been
made with a reasonable degree of rational understanding, and trial counsel refused to
recognize this because she believed Applicant was a malingerer.

 Immediately before the State rested, the judge asked if Applicant would testify. In
response, "Applicant expressed confusion, surprise, and a lack of understanding about the
lack of witnesses and the defense plan. Pressed by counsel about testifying, Applicant
said he felt 'coerced,' but ultimately agreed to testify." However, trial counsel stated in an
affidavit found credible by the habeas court (8) that, Applicant told her before trial that he
wanted to testify, and he relayed a version of events that he said his ex-wife could verify.
Following up on the lead, counsel contacted Applicant's ex-wife, Elizabeth Patterson,
who initially agreed with Applicant, but she quickly admitted that Applicant had asked
her to lie. When counsel confronted Applicant, he confirmed that he told Patterson to lie,
and "[he] got very defensive with [counsel] and said essentially, 'I'm gonna say what I'm
going to say and how I want to say it. You don't need to go over it with me.'" Applicant
made this statement at trial counsel's visit with him before the trial began on April 20,
2004. However, Applicant claims that he was not properly medicated beginning April 25,
2004, the day before his trial began. Thus, Applicant made the decision to testify before
trial when he was correctly medicated. And when he did state that he would testify at trial,
the following exchanged ensued:

MS. BORG: And, Mr. Lahood, did you just make a comment to me that you
thought you were being coerced?


[APPLICANT]: Yes, I feel coerced.


MS. BORG: Have you previously expressed to me your intention to testify
on your own behalf?


[APPLICANT]: I -- as a last result (sic) due to your advice, that I don't take
the stand, I will want to leave the option if I feel like -- because my life --
you know, I want to get up there and say my side of the story if, you know,
if I think -- if my personal opinion, that it will help me, but until -- I want
you to go through -- I want to hear from the police officer, I want to hear
from a forensic expert on these test results. I want to build some kind of -- I
mean, I want that to be concluded and then if I think we haven't shown
reasonable doubt, I will gladly get up there and bare all because I know it's
-- what's going to happen if I get up there. He's going to cross-examine me.


This shows that Applicant engaged in a reasoned choice of legal strategies and options.
Being compelled to take the stand is a violation of a person's constitutional right to not
self-incriminate. See Johnson v. State, 357 S.W.3d 653 (Tex. Crim. App. 2012);
Chapman v. State, 115 S.W.3d 1 (Tex. Crim. App. 2003). In Applicant's case, however,
he was simply faced with the risky choice of testifying in his own defense if counsel
could not establish reasonable doubt. He also acknowledged that he understood the
adversarial nature of the proceedings, when he stated that he knew he would be exposed
to cross-examination if he testified, which might require him to "bare all."

 Applicant points to his bizarre behavior at trial, which he attributes to not receiving
his medications, to demonstrate a lack of competence. The mis-administration of
Applicant's medications began the day before the trial, on April 25, 2004. The State
rested the next day, and Applicant took the stand for about an hour. The habeas court
found that Applicant testified during this time with no problems, and Applicant's
objections do not directly dispute this assessment. In fact, Applicant was able to shift
back and forth to different time periods in his story. He also relayed a detailed account of
his version of events in a constant effort to undermine the victim's testimony by alleging
that she testified against him because he attempted to contact his ex-wife, and that the
victim wanted to go to Houston to "get good dope." At one point, while testifying about
himself and the victim picking up materials to make methamphetamine, he stated that he
did not want to incriminate himself. Counsel asked Applicant if he realized that his
testimony "doesn't sound real good to a jury," and he responded, "That's the truth, you
know." The following day, Applicant's behavior deteriorated. For example, he stated that
the lights were blinking. Later he stated that he needed his medication. However, between
those outbursts, Applicant advised that he wanted certain medical records subpoenaed as
part of his defense. After the comment about his medication being withheld, the trial court
recessed for the day. The following day, Applicant concluded his testimony and explained
that his medication situation had been remedied. Nonetheless, Applicant continued to talk
when he was not supposed to and did not answer questions as he was directed to do, but
he made no further complaints of hallucinations or of not understanding the proceeding. (9)
Applicant's experts indicate that the mis-administration of psychoactive medications
would produce the behavior exhibited by Applicant, but our review of the record indicates
that Applicant was competent during his testimony because (1) he was able to disclose
pertinent facts and events of the case, (2) he understood the adversarial nature of the
proceedings, and (3) he put on a defense with a competing theory of the events that would
have resulted in a not guilty verdict if the jury believed him. 

 Finally, Applicant argues that his suicide attempt after he was found guilty, but
before he was sentenced, shows that there was at least a reasonable probability that he
would have been found incompetent to stand trial. The medical records indicate that on
April 30, 2004, Applicant returned from the hospital with a self-inflicted laceration to his
left wrist. At his initial medical screening at the jail, Applicant denied any suicidal
ideations and complained that he was dissatisfied with his court case and his
prescriptions. One day later, on May 1, 2004, Applicant contradicted himself and told
another screener that he was not getting his depression medications and he still felt
depressed and suicidal. The screener did note, however, that Applicant appeared "mildly
depressed" but had a cooperative attitude and goal-directed speech. Although an
attempted suicide is disturbing, it does not necessarily prove that a person lost the ability
to meaningfully consult with his attorney or that he lacked a rational and factual
understanding of the charged offense and trial proceedings. "A person may be suffering
from a severe mental disease or defect or he may be highly medicated, but he will be
competent to stand trial if he still has the ability to meaningfully consult with his attorney
and he had a rational as well as factual understanding of the charged offense and trial
proceedings." Ex parte Thomas, No. WR-69,859-01, 2009 WL 693606, at *5 (Tex. Crim.
App. Mar. 18, 2009) (Cochran, J., concurring) (not designated for publication).

 Even if Applicant failed to receive some of his medication, there is nothing in the
record that leads us to believe Applicant lost the ability to understand the proceedings or
rationally confer with his counsel. To the contrary, the only time at which Applicant
possibly appeared legally incompetent, the trial was stopped and the medication problem
was corrected. Moreover, the record supports many of the habeas court's findings that
Applicant's behavior was that of a competent person. For example, the habeas court
concluded that Applicant's direct examination showed considerable clarity of thought, his
outbursts regarding medication and lack of comprehension began only on cross-examination, and the only opportunity for the victim's testimony to be rebutted was by
Applicant. He testified that the victim drove the car to Houston (directly contradicting her
assertion that she had been kidnapped), that they stopped in multiple populated areas
where the victim could have alerted someone if she was in trouble, and that the victim
packed for the trip (directly contradicting her assertion that the fact she had a hairbrush,
clothes, and a toothbrush was merely coincidental). Applicant has not met his burden of
proof to show a reasonable probability that he would have been found incompetent if
there had been an incompetency trial. As a result, Applicant's ineffective-assistance-of-counsel claim must fail.

 In reaching our conclusion, we have not ignored Dr. Scarano's opinion that it is
common for individuals with severe mental illness to appear lucid for portions of
proceedings, yet be incompetent during other portions of the proceeding. See Drope v.
Missouri, 420 U.S. 162, 181 (1975) ("Even when a defendant is competent at the
commencement of his trial, a trial court must always be alert to circumstances suggesting
a change that would render the accused unable to meet the standards of competence to
stand trial."). Nevertheless, neither habeas counsel nor Applicant's experts have provided
specific examples of Applicant's behavior sufficient to meet Applicant's burden of proof
that he failed to understand the proceedings or that he had an inability to rationally
communicate with his counsel. To prevail in a claim of ineffective assistance of counsel,
there must be some affirmative showing that the person lacked "sufficient present ability
to consult with the person's lawyer with a reasonable degree of rational understanding" or
"a rational as well as factual understanding of the proceedings against the person." Tex.
Code Crim. Proc. art. 46B.003(a). If there is no affirmative evidence of either prong,
then the applicant's argument must fail because there is an insufficient quantum of
evidence to satisfy the Strickland threshold.

III. CONCLUSION

 We hold that trial counsel's decision to not investigate Applicant's mental-health
history was unreasonable and constituted deficient performance, but Applicant has not
demonstrated prejudice because he has not shown that there is a reasonable probability
that, but for counsel's deficiency, he would have been found incompetent at an
incompetency trial. We do not reach the third question filed and set for our review--the
proper remedy if prejudice had been found--because Applicant cannot show that he was
prejudiced.

 Hervey, J.

Delivered: June 26, 2013 


Publish

1. Although Applicant filed an amended application on May 25, 2007, in which he raised
additional claims of ineffective assistance of counsel, his remaining issues were denied by this
Court. Ex parte LaHood, Nos. AP-76,873 & AP-76,874, 2012 WL 3996712, at *1 (Tex. Crim.
App. Sept. 12, 2012) (per curiam) (not designated for publication).
2. Trial counsel submitted a second, identical affidavit because her original affidavit was
filed in only one of the two cause numbers.
3. According to trial counsel, the described notes written by Applicant spanned several
pages that "were clear and precise as to how Applicant was responding to the testimony at trial
and what issues he wanted addressed."
4. The State's supplemental brief was filed after it acquired four letters written by
Applicant from jail. Applicant objects to the exhibits because they have not been authenticated
and they pertain to his competency in 2011, but the State argues that the letters are relevant to
show Applicant's capability to manipulate people.
5. Sisco v. State, 599 S.W.2d 607, 613 (Tex. Crim. App. [Panel Op.] 1980); see Williams,
663 S.W.2d 832, overruling Johnson v. State, 564 S.W.2d 707 (Tex. Crim. App. 1978) (op. on
reh'g) (overruling a split in precedent that required different constructions of the same statute
depending on when the issue of competency was raised); see also Barber, 737 S.W.2d at 828
(applying the Sisco-Williams line of cases and remanding for an after-the-fact competency
hearing). In Sisco, the appellant was convicted of indecency with a child and sentenced to a term
of imprisonment. Sisco, 599 S.W.2d at 608. The appellant's attorney presented a pretrial motion
for a psychiatric evaluation of his client. Id. An expert was appointed to determine if the
appellant was "mentally competent to stand trial[.]" His finding that the appellant was competent
was admitted without objection at the informal competency hearing. Id.; see Tex. Code Crim.
Proc. art. 46B.004(c). Although other evidence that the appellant was incompetent was
presented at the hearing, the trial court found that he was competent to stand trial based on the
expert's report and, as a result, no jury was empaneled. Sisco, 599 S.W.2d at 608-09. The trial
commenced shortly thereafter, no evidence was presented, and the appellant was found guilty.
After he was convicted, he filed a motion for new trial, but it was denied. Id. at 609. He then
filed a direct appeal with this Court, in which he alleged that the trial court erred in refusing to
empanel a jury to determine if the appellant was incompetent to stand trial. Id. at 608.

 We agreed that the trial court incorrectly determined the threshold issue of whether the
appellant's incompetency had been raised sufficiently to warrant empaneling a jury. Id.
Specifically, we disapproved of the trial court considering evidence of incompetency and
competency at the pretrial hearing. This is because an informal hearing authorized under Article
46B.004(c) of the Texas Code of Criminal Procedure is not the appropriate venue to determine a
person's competency on the merits; rather, the informal inquiry is intended to determine if the
issue of competency is sufficiently raised such that a formal hearing should be held. Thus, we
remanded the cause back to the trial court to apply the appropriate standard of review for an
informal competency inquiry. Id. at 614.
6. In a situation such as this, other jurisdictions have applied this formulation of the
prejudice prong, or a similar derivative. See e.g., Warren v. Baenen, No. 12-1148, 2013 WL
1316905, at *6 (7th Cir. Apr. 2, 2013) (asking whether there is a reasonable probability that, if a
hearing had been held, the defendant would have been found incompetent to stand trial); Stanley
v. Cullen, 633 F.3d 852, 862 (9th Cir. 2011) (adopting the Jermyn, Third Circuit standard);
Jermyn v. Horn, 266 F.3d 257, 283 (3d Cir. 2001) (characterizing the prejudice inquiry as
whether "there is a reasonable probability that the defendant would have been found incompetent
to stand trial had the issue been raised and fully considered"); People v. Burt, 792 N.E.2d 1250,
1261 (Ill. 2001) (applying the bona fide doubt standard to the appellant's claim regarding the trial
court and his alleged incompetency, but applying the standard of a reasonable probability that the
appellant would have been found incompetent to stand trial to the appellant's ineffective-assistance-of-counsel claim).
7. The procedural posture of this case is different from other cases in which a defendant
alleges that the trial-court judge violated his due-process rights by failing to inquire into his
competency on its own motion. See e.g., Robinson, 383 U.S. at 385; Montoya, 291 S.W.3d at
421; Fuller v. State, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008).
8. The trial court judge was also the judge assigned to Applicant's habeas corpus
applications.
9. Applicant was frequently reminded to restrain himself from answering questions not
asked of him and speaking out of turn. Although reminders by the trial court to limit one's
answers to admissible evidence are not uncommon at trial, Applicant's comments were almost
always directly related to what was being said at that moment and made in an attempt to create
reasonable doubt.